LAWS OF NEW YORK, 2013

CHAPTER 1

AN ACT to amend the criminal procedure law, the correction law, the family court act, the executive law, the general business law, the judiciary law, the mental hygiene law, the penal law and the surrogate's court procedure act, in relation to suspension and revocation of firearms licenses; private sale or disposal of firearms, rifles or shotguns and establishing a minimum age to possess a firearm; to amend the family court act, the domestic relations law and the criminal procedure law, in relation to providing for the mandatory suspension or revocation of the firearms license of a person against whom an order of protection or a temporary order of protection has been issued under certain circumstances, or upon violation of any such order; to amend the penal law, in relation to community guns and the criminal sale of a firearm and in relation to the definitions of aggravated and first degree murder; to amend chapter 408 of the laws of 1999 constituting Kendra's Law, in relation to extending the expiration thereof; and to amend the education law, in relation to the New York state school safety improvement teams; and in relation to building aid for metal detectors and safety devices

Became a law January 15, 2013, with the approval of the Governor. Passed on message of necessity pursuant to Article III, section 14 of the Constitution by a majority vote, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Section 330.20 of the criminal procedure law is amended by adding a new subdivision 2-a to read as follows:

*2-a. Firearm, rifle or shotgun surrender order. Upon entry of a verdict of not responsible by reason of mental disease or defect, or upon the acceptance of a plea of not responsible by reason of mental disease or defect, or upon a finding that the defendant is an incapacitated person pursuant to article seven hundred thirty of this chapter, the court shall revoke the defendant's firearm license, if any, inquire of the defendant as to the existence and location of any firearm, rifle or shotgun owned or possessed by such defendant and direct the surrender of such firearm, rifle or shotgun pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law.*

§ 2. The criminal procedure law is amended by adding a new section 380.96 to read as follows:

*§ 380.96 Obligation of sentencing court pursuant to article four hundred of the penal law.*

*Upon judgment of conviction of any offense which would require the seizure of firearms, shotguns or rifles from an individual so convicted, and the revocation of any license or registration issued pursuant to article four hundred of the penal law, the judge pronouncing sentence shall demand surrender of any such license or registration and all firearms, shotguns and rifles. The failure to so demand surrender shall*

EXPLANATION--Matter in *italics* is new; matter in brackets [—] is old law to be omitted.

CHAP. 1                          2

not effect the validity of any revocation pursuant to article four
hundred of the penal law.
  § 3.  Section 404 of  the correction law is amended by adding a new
subdivision 3 to read as follows:
  3. Within a reasonable period prior to discharge of an inmate commit-
ted from a state correctional facility from a hospital in the department
of  mental hygiene to the community, the director shall ensure that a
clinical assessment has been completed to determine whether the inmate
meets  the criteria for assisted outpatient treatment pursuant to subdi-
vision (c) of section 9.60 of the mental hygiene law. If, as a result
of  such assessment, the director determines that the inmate meets such
criteria, prior to discharge the director of the hospital shall either
petition for a court order pursuant to section 9.60 of the mental
hygiene law, or report in writing to the director of community services
of the local governmental unit in which the inmate is expected to reside
so  that  an  investigation may be conducted pursuant to section 9.47 of
the mental hygiene law.
  § 4. Subdivisions 1, 2 and 3 of section 842-a of the family court act,
as added by chapter 644 of the laws of 1996, paragraph (a) of  subdivi-
sion  1 as amended by chapter 434 of the laws of 2000, the opening para-
graph of subdivision 3 as amended by chapter 597 of the  laws  of  1998,
paragraph  (a) of subdivision 3 as amended by chapter 635 of the laws of
1999, are amended to read as follows:
  1.  [Mandatory and permissive suspension] Suspension of  firearms
license and ineligibility for such a license upon the issuance of a
temporary order of protection.  Whenever a temporary order of protection
is issued pursuant to section eight hundred twenty-eight of  this
article, or pursuant to article four, five, six, seven or ten of this
act:
  (a) the court shall suspend any such existing license possessed by the
respondent, order the respondent ineligible for such a license, and
order the immediate surrender pursuant to subparagraph (f) of paragraph
one of subdivision a of section 265.20 and subdivision six of section
400.05 of the penal law, of any or all firearms owned or possessed where
the court receives information that gives the court good cause to
believe that: (i) the respondent has a prior conviction of any violent
felony offense as  defined in section 70.02 of the penal law; (ii) the
respondent has previously been found to have willfully failed to obey  a
prior order of protection and such willful failure involved (A) the
infliction of [serious] physical injury, as defined in subdivision [ten]
nine of section 10.00 of the penal law, (B) the use or threatened use of
a deadly weapon or dangerous instrument as those terms are defined in
subdivisions twelve and thirteen of section 10.00 of the penal law, or
(C) behavior constituting any violent felony offense as defined in
section 70.02 of the penal law; or (iii) the respondent has a prior
conviction for stalking in the first degree as defined in section 120.60
of the penal law, stalking in the second degree as defined in section
120.55 of the penal law, stalking in the third degree as defined in
section 120.50 of the penal law or stalking in the fourth degree as
defined in section 120.45 of such law; and
  (b) the court [may] shall where the court finds a substantial risk
that the respondent may use or threaten to use a firearm unlawfully
against the person or persons for whose protection the temporary order
of protection is issued, suspend any such existing license possessed by
the respondent, order the respondent ineligible for such a license, and
order the immediate surrender pursuant to subparagraph (f) of paragraph

3                                    CHAP. 1

one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law, of any or all firearms owned or possessed.

2. [~~Mandatory and permissive revocation~~] **Revocation** or suspension of firearms license and ineligibility for such a license upon the issuance of an order of protection. Whenever an order of protection is issued pursuant to section eight hundred forty-one of this part**, or pursuant to article four, five, six, seven or ten of this act**:

(a) the court shall revoke any existing license possessed by the respondent, order the respondent ineligible for such a license, and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed where the court finds that the conduct which resulted in the issuance of the order of protection involved (i) the infliction of [~~serious~~] physical injury, as defined in subdivision [~~ten~~] **nine** of section 10.00 of the penal law, (ii) the use or threatened use of a deadly weapon or danger-ous instrument as those terms are defined in subdivisions twelve and thirteen of section 10.00 of the penal law, or (iii) behavior constitut-ing any violent felony offense as defined in section 70.02 of the penal law; and

(b) the court [~~may~~] **shall**, where the court finds a substantial risk that the respondent may use or threaten to use a firearm unlawfully against the person or persons for whose protection the order of protection is issued, (i) revoke any such existing license possessed by the respondent, order the respondent ineligible for such a license and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed or (ii) suspend or continue to suspend any such existing license possessed by the respondent, order the respondent ineligible for such a license, and order the immediate surrender **pursuant to subparagraph (f) of para-graph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed.

3. [~~Mandatory and permissive revocation~~] **Revocation** or suspension of firearms license and ineligibility for such a license upon a finding of a willful failure to obey an order of protection **or temporary order of protection**. Whenever a respondent has been found, pursuant to section eight hundred forty-six-a of this part to have willfully failed to obey an order of protection **or temporary order of protection** issued **pursuant to this act or the domestic relations law, or** by this court or [~~an order of protection issued~~] by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, in addition to any other remedies available pursuant to section eight hundred forty-six-a of this part:

(a) the court shall revoke any such existing license possessed by the respondent, order the respondent ineligible for such a license, and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed where the willful failure to obey such order involves (i) the infliction of [~~serious~~] physical injury, as defined in subdivision [~~ten~~] **nine** of section 10.00 of the penal law, (ii) the use or threatened use of a deadly weapon or dangerous instrument as those terms are defined in subdivisions twelve and thirteen of section 10.00 of the penal law, or (iii) behavior constituting any violent felony offense as defined in

CHAP. 1                              4

section  70.02  of  the  penal  law;  or  (iv)  behavior constituting stalking
in  the  first  degree  as  defined  in  section  120.60  of  the  penal  law,
stalking  in  the  second  degree  as  defined  in  section 120.55 of the penal
law,  stalking  in  the  third  degree  as  defined  in  section 120.50 of the
penal law or stalking in the fourth degree as defined in section  120.45
of such law; and

   (b)  the  court  [may]  shall  where  the  court  finds  a substantial risk
that  the  respondent  may  use  or  threaten  to  use  a  firearm  unlawfully
against  the  person  or  persons  for  whose  protection  the  order  of
protection  was  issued,  (i)  revoke  any  such  existing  license  possessed by
the  respondent,  order  the  respondent  ineligible  for  such  a  license,
whether  or  not  the  respondent  possesses  such  a  license,  and  order  the
immediate  surrender  pursuant to subparagraph (f) of  paragraph  one  of
subdivision a of section 265.20 and subdivision six of section 400.05 of
the penal law, of any or all firearms owned or possessed or (ii) suspend
any  such  existing  license  possessed  by  the  respondent,  order  the
respondent  ineligible  for  such  a  license,  and  order  the  immediate
surrender of any or all firearms owned or possessed.

   § 5. Section 846-a of the family court act, as amended by chapter 597
of the laws of 1998, is amended to read as follows:

   § 846-a.  Powers on failure to obey order. If a respondent  is  brought
before  the  court  for  failure  to  obey  any  lawful  order  issued  under this
article  or  an  order  of  protection  or temporary order of protection
issued  pursuant to this act or issued  by a court of competent jurisdic-
tion of another state, territorial or tribal jurisdiction [in a proceed-
ing] and if, after hearing, the court is satisfied by competent proof
that  the  respondent  has  willfully  failed  to  obey  any  such  order,  the
court  may  modify  an  existing  order  or temporary order of  protection  to
add  reasonable  conditions  of  behavior  to  the  existing  order  [of
protection], make a new order of protection in accordance  with  section
eight  hundred  forty-two  of this part, may order the forfeiture of bail
in a manner consistent with article five hundred forty of  the  criminal
procedure  law  if bail has been ordered pursuant to this act, may order
the respondent to pay the petitioner's reasonable and necessary  counsel
fees  in  connection  with  the  violation  petition where the court finds
that  the  violation  of  its  order  was  willful,  and  may  commit the respond-
ent to jail for a term not to exceed six months.  Such  commitment may be
served upon certain specified days or parts of days  as  the  court  may
direct,  and  the  court  may,  at  any  time  within  the term of such sentence,
revoke  such  suspension  and  commit  the  respondent for the remainder of
the original sentence, or suspend the remainder of such sentence. If the
court determines that the willful failure to obey  such  order  involves
violent  behavior  constituting  the  crimes  of  menacing, reckless endanger-
ment,  assault  or  attempted  assault  and  if  such  a  respondent is licensed
to carry, possess, repair and dispose of firearms  pursuant  to  section
400.00  of  the  penal  law,  the  court  may  also  immediately revoke such
license and may arrange for the immediate surrender  pursuant to subpara-
graph (f) of paragraph one of subdivision a of section 265.20 and subdi-
vision six of section 400.05 of the  penal  law,  and disposal of  any
firearm  such  respondent  owns  or  possesses.  If  the  willful failure to
obey such order involves the infliction of [serious] physical injury  as
defined  in  subdivision  [ten]  nine of section 10.00 of the penal law or
the  use  or  threatened  use  of  a  deadly  weapon  or dangerous instrument, as
those terms are defined in subdivisions twelve and thirteen of  section
10.00 of the penal law, such revocation and immediate surrender  pursuant
to  subparagraph (f) of paragraph one of subdivision a of section 265.20

and subdivision six of section 400.05 of the penal law six and disposal of any firearm owned or possessed by respondent shall be mandatory, pursuant to subdivision eleven of section 400.00 of the penal law.

§ 6. The family court act is amended by adding a new section 446-a to read as follows:

§ 446-a. Firearms; surrender and license suspension, revocation and ineligibility. Upon the issuance of an order of protection or temporary order of protection, or upon a violation of such order, the court shall make a determination regarding the suspension and revocation of a license to carry, possess, repair or dispose of a firearm or firearms, ineligibility for such a license and the surrender of firearms in accordance with section eight hundred forty-two-a of this act.

§ 7. The family court act is amended by adding a new section 552 to read as follows:

§ 552. Firearms; surrender and license suspension, revocation and ineligibility. Upon the issuance of an order of protection or temporary order of protection, or upon a violation of such order, the court shall make a determination regarding the suspension and revocation of a license to carry, possess, repair or dispose of a firearm or firearms, ineligibility for such a license and the surrender of firearms in accordance with section eight hundred forty-two-a of this act.

§ 8. The family court act is amended by adding a new section 656-a to read as follows:

§ 656-a. Firearms; surrender and license suspension, revocation and ineligibility. Upon the issuance of an order of protection or temporary order of protection, or upon a violation of such order, the court shall make a determination regarding the suspension and revocation of a license to carry, possess, repair or dispose of a firearm or firearms, ineligibility for such a license and the surrender of firearms in accordance with section eight hundred forty-two-a of this act.

§ 9. The family court act is amended by adding a new section 780-a to read as follows:

§ 780-a. Firearms; surrender and license suspension, revocation and ineligibility. Upon the issuance of an order of protection or temporary order of protection, or upon a violation of such order, the court shall make a determination regarding the suspension and revocation of a license to carry, possess, repair or dispose of a firearm or firearms, ineligibility for such a license and the surrender of firearms in accordance with section eight hundred forty-two-a of this act.

§ 10. The family court act is amended by adding a new section 1056-a to read as follows:

§ 1056-a. Firearms; surrender and license suspension, revocation and ineligibility. Upon the issuance of an order of protection or temporary order of protection, or upon a violation of such order, the court shall make an order in accordance with section eight hundred forty-two-a of this act.

§ 11. The first undesignated and closing paragraphs of subdivision 3 of section 240 of the domestic relations law, as added by chapter 606 of the laws of 1999, are amended to read as follows:

g. Any party moving for a temporary order of protection pursuant to this subdivision during hours when the court is open shall be entitled to file such motion or pleading containing such prayer for emergency relief on the same day that such person first appears at such court, and a hearing on the motion or portion of the pleading requesting such emergency relief shall be held on the same day or the next day that the court is in session following the filing of such motion or pleading.

CHAP. 1                          6

  h.  Upon issuance of an order of protection or temporary order of
protection or upon a violation of such order, the court [~~may~~] shall make
[~~an order~~] a determination regarding the suspension and revocation of a
license to carry, possess, repair or dispose of a firearm or firearms,
ineligibility for such a license and the surrender of firearms in
accordance with [~~section~~] sections eight hundred forty-two-a and eight
hundred forty-six-a of the family court act [~~directing the surrender of
firearms, revoking or suspending a party's firearms license, and/or
directing that such party be ineligible to receive a firearms license~~],
as applicable. Upon issuance of an order of protection pursuant to this
section or upon a finding of a violation thereof, the court also may
direct payment of restitution in an amount not to exceed ten thousand
dollars in accordance with subdivision (e) of section eight hundred
forty-one of such act; provided, however, that in no case shall an order
of restitution be issued where the court determines that the party
against whom the order would be issued has already compensated the
injured party or where such compensation is incorporated in a final
judgment or settlement of the action.
  § 12.  Subdivision 9 of section 252 of the domestic relations law, as
added by chapter 606 of the laws of 1999, is amended to read as follows:
  9. Upon issuance of an order of protection or temporary order of
protection or upon a violation of such order, the court [~~may take an
order~~] shall make a determination regarding the suspension and revoca-
tion of a license to carry, possess, repair or dispose of a firearm or
firearms, ineligibility for such a license and the surrender of firearms
in accordance with [~~section~~] sections eight hundred forty-two-a and
eight hundred forty-six-a of the family court act [~~directing the surren-
der of firearms, revoking or suspending a party's firearms license,
and/or directing that such party be ineligible to receive a firearms
license~~], as applicable. Upon issuance of an order of protection pursu-
ant to this section or upon a finding of a violation thereof, the court
also may direct payment of restitution in an amount not to exceed ten
thousand dollars in accordance with subdivision (e) of section eight
hundred forty-one of such act; provided, however, that in no case shall
an order of restitution be issued where the court determines that the
party against whom the order would be issued has already compensated the
injured party or where such compensation is incorporated in a final
[~~judgement~~] judgment or settlement of the action.
  § 13. The opening paragraph and paragraph (b) of subdivision 1 of
section 530.14 of the criminal procedure law, as added by chapter 644 of
the laws of 1996, are amended to read as follows:
  [~~Mandatory and permissive suspension~~] Suspension of firearms license
and ineligibility for such a license upon issuance of temporary order of
protection.  Whenever a temporary order of protection is issued pursuant
to subdivision one of section 530.12 or subdivision one of section
530.13 of this article:
  (b) the court [~~may~~] shall where the court finds a substantial risk
that the defendant may use or threaten to use a firearm unlawfully
against the person or persons for whose protection the temporary order
of protection is issued, suspend any such existing license possessed by
the defendant, order the defendant ineligible for such a license and
order the immediate surrender pursuant to subparagraph (f) of paragraph
one of subdivision a of section 265.20 and subdivision six of section
400.05 of the penal law, of any or all firearms owned or possessed.

7                                    CHAP. 1

§ 14. The opening paragraph and paragraph (b) of subdivision 2 of section 530.14 of the criminal procedure law, as added by chapter 644 of the laws of 1996, are amended to read as follows:

[~~Mandatory and permissive revocation~~] **Revocation** or suspension of firearms license and ineligibility for such a license upon issuance of an order of protection. Whenever an order of protection is issued pursuant to subdivision five of section 530.12 or subdivision four of section 530.13 of this article:

(b) the court [~~may~~] **shall** where the court finds a substantial risk that the defendant may use or threaten to use a firearm unlawfully against the person or persons for whose protection the order of protection is issued, (i) revoke any such existing license possessed by the defendant, order the defendant ineligible for such a license and order the immediate surrender of any or all firearms owned or possessed or (ii) suspend or continue to suspend any such existing license possessed by the defendant, order the defendant ineligible for such a license and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed.

§ 15. The opening paragraph and paragraph (b) of subdivision 3 of section 530.14 of the criminal procedure law, the opening paragraph as amended by chapter 597 of the laws of 1998 and paragraph (b) as added by chapter 644 of the laws of 1996, are amended to read as follows:

[~~Mandatory and permissive revocation~~] **Revocation** or suspension of firearms license and ineligibility for such a license upon a finding of a willful failure to obey an order of protection. Whenever a defendant has been found pursuant to subdivision eleven of section 530.12 or subdivision eight of section 530.13 of this article to have willfully failed to obey an order of protection issued by a court of competent jurisdiction in this state or another state, territorial or tribal jurisdiction, in addition to any other remedies available pursuant to subdivision eleven of section 530.12 or subdivision eight of section 530.13 of this article:

(b) the court [~~may~~] **shall** where the court finds a substantial risk that the defendant may use or threaten to use a firearm unlawfully against the person or persons for whose protection the order of protection was issued, (i) revoke any such existing license possessed by the defendant, order the defendant ineligible for such a license and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed or (ii) suspend any such existing license possessed by the defendant, order the defendant ineligible for such a license and order the immediate surrender **pursuant to subparagraph (f) of paragraph one of subdivision a of section 265.20 and subdivision six of section 400.05 of the penal law,** of any or all firearms owned or possessed.

§ 16. Section 837 of the executive law is amended by adding a new subdivision 19 to read as follows:

**19. Receive names and other non-clinical identifying information pursuant to section 9.46 of the mental hygiene law; provided, however, any such information shall be destroyed five years after such receipt, or pursuant to a proceeding brought under article seventy-eight of the civil practice law and rules determining that an individual is eligible for a license pursuant to section 400.00 of the penal law and otherwise permitted to possess a firearm.**

CHAP. 1                              8

§ 17. The general business law is amended by adding a new article 39-DDD to read as follows:

ARTICLE 39-DDD

PRIVATE SALE OR DISPOSAL OF FIREARMS, RIFLES AND SHOTGUNS

Section 898. Private sale or disposal of firearms, rifles and shotguns.

§ 898. Private sale or disposal of firearms, rifles and shotguns. 1. In addition to any other requirements pursuant to state and federal law, all sales, exchanges or disposals of firearms, rifles or shotguns shall be conducted in accordance with this section unless such sale, exchange or disposal is conducted by a licensed importer, licensed manufacturer or licensed dealer, as those terms are defined in 18 USC § 922, when such sale, exchange or disposal is conducted pursuant to that person's federal firearms license or such sale, exchange or disposal is between members of an immediate family. For purposes of this section, "immediate family" shall mean spouses, domestic partners, children and step-children.

2. Before any sale, exchange or disposal pursuant to this article, a national instant criminal background check must be completed by a dealer who consents to conduct such check, and upon completion of such background check, shall complete a document, the form of which shall be approved by the superintendent of state police, that identifies and confirms that such check was performed.

3. All dealers shall maintain a record of such transactions conducted pursuant to this section and such record shall be maintained on the premises mentioned and described in the license and shall be open at all reasonable hours for inspection by any peace officer, acting pursuant to his or her special duties, or police officer.

4. A dealer may require that any sale or transfer conducted pursuant to this section be subject to a fee of not to exceed ten dollars per transaction.

5. Any record produced pursuant to this section and any transmission thereof to any government agency shall not be considered a public record for purposes of article six of the public officers law.

6. Any person who knowingly violates the provisions of this article shall be guilty of a class A misdemeanor punishable as provided for in the penal law.

§ 18. Paragraph (q) of subdivision 2 of section 212 of the judiciary law, as added by chapter 491 of the laws of 2008, is amended to read as follows:

(q) Adopt rules to require transmission, to the criminal justice information services division of the federal bureau of investigation or to the division of criminal justice services, of the name and other identifying information of each person who has a guardian appointed for him or her pursuant to any provision of state law, based on a determination that as a result of marked subnormal intelligence, mental illness, incapacity, condition or disease, he or she lacks the mental capacity to contract or manage his or her own affairs. Any such records transmitted directly to the federal bureau of investigation must also be transmitted to the division of criminal justice services, and any records received by the division of criminal justice services pursuant to this paragraph may be checked against the statewide license and record database.

§ 19. Subdivision (j) of section 7.09 of the mental hygiene law, as added by chapter 491 of the laws of 2008, is amended to read as follows:

(j) (1) The commissioner, in cooperation with other applicable state agencies, shall [be authorized to] collect, retain or modify data or

9                                                    CHAP. 1

records, [or to] **and shall** transmit such data or records**: (i)** to the
division of criminal justice services, or to the criminal justice infor-
mation services division of the federal bureau of investigation, for the
purposes of responding to queries to the national instant criminal back-
ground check system regarding attempts to purchase or otherwise take
possession of firearms, as defined in 18 USC 921(a)(3), in accordance
with applicable federal laws or regulations**, or (ii) to the division of
criminal justice services, which may re-disclose such data and records
only for determining whether a license issued pursuant to section 400.00
of the penal law should be denied, suspended or revoked, under subdivi-
sion eleven of such section, or for determining whether a person is no
longer permitted under federal or state law to possess a firearm**. Such
records**, which may not be used for any other purpose,** shall include only
names and other non-clinical identifying information of persons who have
been involuntarily committed to a hospital pursuant to article nine of
this chapter, **or section four hundred two or subdivision two of section
five hundred eight of the correction law,** or article seven hundred thir-
ty or section 330.20 of the criminal procedure law or sections 322.2 or
353.4 of the family court act, or to a secure treatment facility pursu-
ant to article ten of this chapter.

  **(2)** The commissioner shall establish within the office of mental
health an administrative process to permit a person who has been or may
be disqualified from possessing such a firearm pursuant to 18 USC
922(4)(d) **or who has been or may be disqualified from continuing to have
a license to carry, possess, repair, or dispose of a firearm under
section 400.00 of the penal law because such person was involuntarily
committed or civilly confined to a facility under the jurisdiction of
the commissioner,** to petition for relief from that disability where such
person's record and reputation are such that such person will not be
likely to act in a manner dangerous to public safety and where the
granting of the relief would not be contrary to public safety. The
commissioner shall promulgate regulations to establish the relief from
disabilities program, which shall include, but not be limited to,
provisions providing for: (i) an opportunity for a disqualified person
to petition for relief in writing; (ii) the authority for the agency to
require that the petitioner undergo a clinical evaluation and risk
assessment; and (iii) a requirement that the agency issue a decision in
writing explaining the reasons for a denial or grant of relief. The
denial of a petition for relief from disabilities may be reviewed de
novo pursuant to the proceedings under article seventy-eight of the
civil practice law and rules.

  § 20. The mental hygiene law is amended by adding a new section 9.46
to read as follows:

  **§ 9.46 Reports of substantial risk or threat of harm by mental health
       professionals.**
  **(a) For purposes of this section, the term "mental health profes-
sional" shall include a physician, psychologist, registered nurse or
licensed clinical social worker.**
  **(b) Notwithstanding any other law to the contrary, when a mental
health professional currently providing treatment services to a person
determines, in the exercise of reasonable professional judgment, that
such person is likely to engage in conduct that would result in serious
harm to self or others, he or she shall be required to report, as soon
as practicable, to the director of community services, or the director's
designee, who shall report to the division of criminal justice services
whenever he or she agrees that the person is likely to engage in such**

CHAP. 1                        10

conduct.   Information  transmitted to the division of criminal justice services shall be limited to names and other non-clinical identifying information, which may only be used for determining whether a license issued pursuant to section 400.00 of the penal law should be suspended or revoked, or for determining whether a person is ineligible for a license issued pursuant to section 400.00 of the penal law, or is no longer permitted under state or federal law to possess a firearm.

  (c) Nothing in this section shall be construed to require a mental health professional to take any action which, in the exercise of reasonable professional judgment, would endanger such mental health professional or increase the danger to a potential victim or victims.

  (d) The decision of a mental health professional to disclose or not to disclose in accordance with this section, when made reasonably and in good faith, shall not be the basis for any civil or criminal liability of such mental health professional.

§ 21. Paragraph 5 of subdivision (b) of section 9.47 of the mental hygiene law is renumbered paragraph 7 and two new paragraphs 5 and 6 are added to read as follows:

  (5) ensuring evaluation of the need for ongoing assisted outpatient treatment pursuant to subdivision (k) of section 9.60 of this article prior to the expiration of any assisted outpatient treatment order;

  (6) if he or she has been ordered to provide for or arrange for assisted outpatient treatment pursuant to paragraph five of subdivision (j) of section 9.60 of this article or became the appropriate director pursuant to this paragraph or subdivision (c) of section 9.48 of this article, notifying the director of community services of the new county of residence when he or she has reason to believe that an assisted outpatient has or will change his or her county of residence during the pendency of an assisted outpatient treatment order. Upon such change of residence, the director of the new county of residence shall become the appropriate director, as such term is defined in section 9.60 of this article; and

§ 22. Section 9.48 of the mental hygiene law is amended by adding a new subdivision (c) to read as follows:

  (c) Directors of assisted outpatient treatment programs providing services described in paragraph one of subdivision (a) of section 9.60 of this article pursuant to any court order issued under such section shall evaluate the need for ongoing assisted outpatient treatment pursuant to subdivision (k) of section 9.60 of this article prior to the expiration of any assisted outpatient treatment order; and shall notify the director of community services of the new county of residence when he or she has reason to believe that an assisted outpatient has or will change his or her county of residence during the pendency of an assisted outpatient treatment order. Upon such change of residence, the director of the new county of residence shall become the appropriate director, as such term is defined in section 9.60 of this article.

§ 23. Paragraph 3 of subdivision (a), paragraphs 2 and 5 of subdivision (j) and subdivisions (k) and (n) of section 9.60 of the mental hygiene law, as amended by chapter 158 of the laws of 2005, are amended to read as follows:

  (3) "director of community services" and "local governmental unit" shall have the same meanings as provided in article forty-one of this chapter. The "appropriate director" shall mean the director of community services of the county where the assisted outpatient resides, even if it is a different county than the county where the assisted outpatient treatment order was originally issued.

(2) If after hearing all relevant evidence, the court finds by clear and convincing evidence that the subject of the petition meets the criteria for assisted outpatient treatment, and there is no appropriate and feasible less restrictive alternative, the court may order the subject to receive assisted outpatient treatment for an initial period not to exceed [~~six months~~] one year. In fashioning the order, the court shall specifically make findings by clear and convincing evidence that the proposed treatment is the least restrictive treatment appropriate and feasible for the subject. The order shall state an assisted outpatient treatment plan, which shall include all categories of assisted outpatient treatment, as set forth in paragraph one of subdivision (a) of this section, which the assisted outpatient is to receive, but shall not include any such category that has not been recommended in both the proposed written treatment plan and the testimony provided to the court pursuant to subdivision (i) of this section.

(5) If the petitioner is the director of a hospital that operates an assisted outpatient treatment program, the court order shall direct the hospital director to provide or arrange for all categories of assisted outpatient treatment for the assisted outpatient throughout the period of the order. [~~For all other persons~~] In all other instances, the order shall require the appropriate director [~~of community services of the appropriate local governmental unit~~], as that term is defined in this section, to provide or arrange for all categories of assisted outpatient treatment for the assisted outpatient throughout the period of the order.

(k) Petition for additional periods of treatment. (1) Prior to the expiration of an order pursuant to this section, the appropriate director shall review whether the assisted outpatient continues to meet the criteria for assisted outpatient treatment. If, as documented in the petition, the director determines that such criteria continue to be met or has made appropriate attempts to, but has not been successful in eliciting, the cooperation of the subject to submit to an examination, within thirty days prior to the expiration of an order of assisted outpatient treatment, such director may petition the court to order continued assisted outpatient treatment pursuant to paragraph two of this subdivision. Upon determining whether such criteria continue to be met, such director shall notify the program coordinator in writing as to whether a petition for continued assisted outpatient treatment is warranted and whether such a petition was or will be filed.

(2) Within thirty days prior to the expiration of an order of assisted outpatient treatment, the appropriate director or the current petitioner, if the current petition was filed pursuant to subparagraph (i) or (ii) of paragraph one of subdivision (e) of this section, and the current petitioner retains his or her original status pursuant to the applicable subparagraph, may petition the court to order continued assisted outpatient treatment for a period not to exceed one year from the expiration date of the current order. If the court's disposition of such petition does not occur prior to the expiration date of the current order, the current order shall remain in effect until such disposition. The procedures for obtaining any order pursuant to this subdivision shall be in accordance with the provisions of the foregoing subdivisions of this section; provided that the time restrictions included in paragraph four of subdivision (c) of this section shall not be applicable. The notice provisions set forth in paragraph six of subdivision (j) of this section shall be applicable. Any court order requiring periodic blood tests or urinalysis for the presence of alcohol or illegal drugs

CHAP. 1                          12

shall be subject to review after six months by the physician who devel-
oped the written treatment plan or another physician designated by the
director, and such physician shall be authorized to terminate such blood
tests or urinalysis without further action by the court.

(n) Failure to comply with assisted outpatient treatment. Where in the
clinical judgment of a physician, (i) the assisted outpatient, has
failed or refused to comply with the assisted outpatient treatment, (ii)
efforts were made to solicit compliance, and (iii) such assisted outpa-
tient may be in need of involuntary admission to a hospital pursuant to
section 9.27 of this article or immediate observation, care and treat-
ment pursuant to section 9.39 or 9.40 of this article, such physician
may request the **appropriate** director of community services, the direc-
tor's designee, or any physician designated by the director of community
services pursuant to section 9.37 of this article, to direct the removal
of such assisted outpatient to an appropriate hospital for an examina-
tion to determine if such person has a mental illness for which hospi-
talization is necessary pursuant to section 9.27, 9.39 or 9.40 of this
article. Furthermore, if such assisted outpatient refuses to take medi-
cations as required by the court order, or he or she refuses to take, or
fails a blood test, urinalysis, or alcohol or drug test as required by
the court order, such physician may consider such refusal or failure
when determining whether the assisted outpatient is in need of an exam-
ination to determine whether he or she has a mental illness for which
hospitalization is necessary. Upon the request of such physician, the
**appropriate** director, the director's designee, or any physician desig-
nated pursuant to section 9.37 of this article, may direct peace offi-
cers, acting pursuant to their special duties, or police officers who
are members of an authorized police department or force or of a sher-
iff's department to take the assisted outpatient into custody and trans-
port him or her to the hospital operating the assisted outpatient treat-
ment program or to any hospital authorized by the director of community
services to receive such persons. Such law enforcement officials shall
carry out such directive. Upon the request of such physician, the **appro-
priate** director, the director's designee, or any physician designated
pursuant to section 9.37 of this article, an ambulance service, as
defined by subdivision two of section three thousand one of the public
health law, or an approved mobile crisis outreach team as defined in
section 9.58 of this article shall be authorized to take into custody
and transport any such person to the hospital operating the assisted
outpatient treatment program, or to any other hospital authorized by the
**appropriate** director of community services to receive such persons. Any
director of community services, or designee, shall be authorized to
direct the removal of an assisted outpatient who is present in his or
her county to an appropriate hospital, in accordance with the provisions
of this subdivision, based upon a determination of the appropriate
director of community services directing the removal of such assisted
outpatient pursuant to this subdivision. Such person may be retained for
observation, care and treatment and further examination in the hospital
for up to seventy-two hours to permit a physician to determine whether
such person has a mental illness and is in need of involuntary care and
treatment in a hospital pursuant to the provisions of this article. Any
continued involuntary retention in such hospital beyond the initial
seventy-two hour period shall be in accordance with the provisions of
this article relating to the involuntary admission and retention of a
person. If at any time during the seventy-two hour period the person is
determined not to meet the involuntary admission and retention

provisions of this article, and does not agree to stay in the hospital
as a voluntary or informal patient, he or she must be released. Failure
to comply with an order of assisted outpatient treatment shall not be
grounds for involuntary civil commitment or a finding of contempt of
court.

§ 24. Subdivision (g) of section 13.09 of the mental hygiene law, as
amended by chapter 168 of the laws of 2010, is amended to read as
follows:

(g) **(1)** The commissioner, in cooperation with other applicable state
agencies, shall [~~be authorized to~~] collect, retain or modify data or
records, [~~or to~~] **and shall** transmit such data or records to**: (i)** the
division of criminal justice services, or to the criminal justice infor-
mation services division of the federal bureau of investigation, for the
purposes of responding to queries to the national instant criminal back-
ground check system regarding attempts to purchase or otherwise take
possession of firearms, as defined in 18 USC 921(a)(3), in accordance
with applicable federal laws or regulations**, or (ii) to the division of
criminal justice services, for the purposes of determining whether a
license issued pursuant to section 400.00 of the penal law should be
denied, suspended or revoked, under subdivision eleven of such section,
or for determining whether a person is no longer permitted under federal
or state law to possess a firearm**. Such records shall include only
names and other non-clinical identifying information of persons who have
had a guardian appointed for them pursuant to any provision of state
law, based on a determination that as a result of marked subnormal
intelligence, mental illness, incapacity, condition or disease, they
lack the mental capacity to contract or manage their own affairs, and
persons who have been involuntarily committed to a facility pursuant to
article fifteen of this chapter, or article seven hundred thirty or
section 330.20 of the criminal procedure law or sections 322.2 or 353.4
of the family court act.

**(2)** The commissioner shall establish within the office for people with
developmental disabilities an administrative process to permit a person
who has been or may be disqualified from possessing such a firearm
pursuant to 18 USC 922(4)(d)**, or who has been or may be disqualified
from continuing to have a license to carry, possess, repair, or dispose
of a firearm under section 400.00 of the penal law because such person
was involuntarily committed or civilly confined to a facility under the
jurisdiction of the commissioner,** to petition for relief from that disa-
bility where such person's record and reputation are such that such
person will not be likely to act in a manner dangerous to public safety
and where the granting of the relief would not be contrary to public
safety. The commissioner shall promulgate regulations to establish the
relief from disabilities program, which shall include, but not be limit-
ed to, provisions providing for: (i) an opportunity for a disqualified
person to petition for relief in writing; (ii) the authority for the
agency to require that the petitioner undergo a clinical evaluation and
risk assessment; and (iii) a requirement that the agency issue a deci-
sion in writing explaining the reasons for a denial or grant of relief.
The denial of a petition for relief from disabilities may be reviewed de
novo pursuant to the proceedings under article seventy-eight of the
civil practice law and rules.

§ 25. Paragraph 12 of subdivision (c) of section 33.13 of the mental
hygiene law, as amended by chapter 158 of the laws of 2005, is amended
and a new paragraph 15 is added to read as follows:

CHAP. 1                          14

12.  to a director of community services as defined in article nine of this chapter or his **or her** designee, provided that such director or  his or  her designee **(i)** requests such information in the exercise of his or her statutory functions, powers and duties  pursuant  to  section  9.37, 9.45,  9.47, 9.48, 9.60 or 41.13 of this chapter**; or (ii) the disclosure of information is required pursuant to section 9.46 of this chapter**.

**15. to the division of criminal  justice  services,  names  and  other non-clinical  identifying information for the sole purpose of implement-ing the division's responsibilities and duties under sections 400.00 and 400.02 of the penal law.**

§ 26. Section 10.00 of the penal law is amended by adding a new subdi-vision 21 to read as follows:

**21. "Drug trafficking felony" means  any  of  the  following  offenses defined  in article two hundred twenty of this chapter: violation of use of a child to commit  a  controlled  substance  offense  as  defined  in section  220.28;  criminal  sale  of a controlled substance in the fourth degree as defined in section  220.34;  criminal  sale  of  a  controlled substance  in  the  third  degree as defined in section 220.39; criminal sale of a controlled substance  in  the  second  degree  as  defined  in section  220.41;  criminal  sale  of a controlled substance in the first degree as defined in section 220.43; criminal  sale  of  a  controlled substance in or near school grounds as defined in section 220.44; unlaw-ful  manufacture  of  methamphetamine in the second degree as defined in section 220.74; unlawful manufacture of  methamphetamine  in  the  first degree  as defined in section 220.75; or operating as a major trafficker as defined in section 220.77.**

§ 26-a. The penal law is amended by adding a new  section  60.11-a  to read as follows:

**§  60.11-a  Authorized  dispositions;  certain  criminal  possession of a weapon in the third degree offenders.**

**When a person is to be sentenced upon conviction of the crime of crim-inal possession of a weapon in the third degree as defined  in  subdivi-sion ten of section 265.02 of this chapter, the court must sentence such defendant  to a determinate sentence as provided in subparagraph (ii) of paragraph (c) of subdivision three of section  70.02  of  this  chapter, unless  a  greater  minimum  sentence  is  otherwise required by another provision of this chapter.**

§ 27. Paragraphs (b) and (c) of subdivision 1 of section 70.02 of  the penal  law,  paragraph  (b) as amended by chapter 148 of the laws of 2011 and paragraph (c) as amended by chapter 405 of  the  laws  of  2010,  are amended to read as follows:

(b)  Class  C violent felony offenses: an attempt to commit any of the class B felonies set forth in paragraph (a) of this subdivision;  aggra-vated  criminally negligent homicide as defined in section 125.11, aggra-vated  manslaughter  in  the second degree as defined in section 125.21, aggravated sexual abuse in the  second  degree  as  defined  in  section 130.67, assault on a peace officer, police officer, fireman or emergency medical  services  professional as defined in section 120.08, assault on a judge as defined in section 120.09, gang assault in the second  degree as defined  in  section 120.06, strangulation in the first degree as defined in section 121.13, burglary in the second degree as defined  in  section 140.25,  robbery  in the second degree as defined in section 160.10, crim-inal  possession  of a weapon in the second degree as defined in section 265.03, criminal use of a firearm in the second  degree  as  defined  in section  145.08,  criminal  sale  of  a  firearm in the second degree as defined in section 265.12, criminal sale of a firearm with the aid of  a

minor  as defined in section 265.14, **aggravated criminal possession of a
weapon as defined in section 265.19,** soliciting or providing support for
an act of terrorism in the first degree as defined  in  section  490.15,
hindering  prosecution  of  terrorism in the second degree as defined in
section 490.30, and criminal possession of a chemical weapon or  biolog-
ical weapon in the third degree as defined in section 490.37.

(c)  Class  D violent felony offenses: an attempt to commit any of the
class C felonies set forth in paragraph (b); reckless assault of a child
as defined in section 120.02, assault in the second degree as defined in
section 120.05, menacing a police officer or peace officer as defined in
section 120.18, stalking in the first degree, as defined in  subdivision
one  of section 120.60, strangulation in the second degree as defined in
section 121.12, rape in the second degree as defined in section  130.30,
criminal  sexual  act  in the second degree as defined in section 130.45,
sexual abuse in the first degree as defined in section 130.65, course of
sexual conduct against a child  in  the  second  degree  as  defined  in
section  130.80,  aggravated sexual abuse in the third degree as defined
in  section  130.66,  facilitating  a  sex  offense  with  a  controlled
substance  as defined in section 130.90, criminal possession of a weapon
in the third degree as defined in subdivision  five,  six,  seven  [~~or~~]**,**
eight**, nine or ten** of section 265.02, criminal sale of a firearm in the
third degree as defined in section  265.11,  intimidating  a  victim  or
witness  in  the second degree as defined in section 215.16, soliciting or
providing  support  for  an  act  of  terrorism  in  the second degree as
defined in section 490.10, and making a terroristic threat as defined in
section 490.20, falsely reporting an incident  in  the  first  degree  as
defined  in  section 240.60, placing a false bomb or hazardous substance
in the first degree as defined in section 240.62, placing  a  false  bomb
or hazardous substance in a sports stadium or arena, mass transportation
facility  or  enclosed  shopping  mall as defined in section 240.63, and
aggravated unpermitted use of indoor pyrotechnics in the first degree as
defined in section 405.18.

§ 28. The opening paragraph of  paragraph  (c)  of  subdivision  2  of
section 70.02 of the penal law, as amended by chapter 764 of the laws of
2005, is amended to read as follows:

Except  as  provided in subdivision six of section 60.05, the sentence
imposed upon a person who stands convicted of the class D violent felony
offenses of criminal possession of a  weapon  in  the  third  degree  as
defined  in  subdivision  [~~four,~~]  five,  seven  [~~or~~]**,**  eight **or nine** of
section 265.02, criminal sale of a firearm  in  the  third  degree  as
defined  in  section 265.11 or the class E violent felonies of attempted
criminal possession of a weapon in the third degree as defined in subdi-
vision  [~~four,~~]  five,  seven  [~~or~~]**,**  eight **or nine** of section 265.02 must be
a sentence to a determinate period of imprisonment, or, in the  alterna-
tive,  a  definite  sentence of imprisonment for a period of no less than
one year, except that:

§ 29. Paragraph (b) of subdivision 3 of section  70.02  of  the  penal
law,  as  amended by chapter 765 of the laws of 2005, is amended to read
as follows:

(b) For a class C felony, the term must be at least three and one-half
years and must not exceed fifteen years,  provided,  however,  that  the
term  must be: (i) at least seven years and must not exceed twenty years
where the sentence is for the crime of aggravated  manslaughter  in  the
second  degree  as  defined  in  section 125.21 of this chapter; (ii) at
least seven years and must not exceed twenty years where the sentence is
for the crime of attempted aggravated assault upon a police  officer  or

CHAP. 1                            16

peace  officer  as defined in section 120.11 of this chapter; [and] (iii)
at least three and one-half years and must not exceed twenty years where
the sentence is for the crime of aggravated criminally  negligent  homi-
cide  as  defined  in  section 125.11 of this chapter; and (iv) at least
five years and must not exceed fifteen years  where  the  sentence  is
imposed  for  the crime of aggravated criminal possession of a weapon as
defined in section 265.19 of this chapter;

§ 30. Paragraph (c) of subdivision 3 of section  70.02  of  the  penal
law,  as  amended by chapter 765 of the laws of 2005, is amended to read
as follows:

(c) For a class D felony, the term must be at least two years and must
not exceed seven years, provided, however, that the term must be: (i) at
least two years and must not exceed eight years where  the  sentence  is
for  the  crime of menacing a police officer or peace officer as defined
in section 120.18 of this chapter; and (ii) at least three and  one-half
years  and must not exceed seven years where the sentence is imposed for
the crime of criminal possession of a weapon  in  the  third  degree  as
defined in subdivision ten of section 265.02 of this chapter;

§ 31. The penal law is amended by adding a new section 115.20 to read
as follows:

§ 115.20 Criminal facilitation; definitions and construction.

For purposes of this article, such conduct shall include, but  not  be
limited  to,  making available, selling, exchanging, giving or disposing
of a community gun, which in fact, aids a  person  to  commit  a  crime.
"Community  gun"  shall  mean  a  firearm  that is actually shared, made
available, sold, exchanged, given or disposed of among or between two or
more persons, at least one of whom is not  authorized  pursuant  to  law  to
possess  such  firearm. "Dispose of" shall have the same meaning as that
term is defined in section 265.00 of this chapter. "Share" and "make
available"  shall,  in  the  case  of a firearm, be construed to include
knowingly placing such firearm at a location accessible and known to one
or more other persons.

§ 32. Section 120.05 of the penal law is amended  by  adding  a  new
subdivision 4-a to read as follows:

4-a.  He  recklessly  causes physical injury to another person who is a
child under the age of eighteen by intentional discharge of  a  firearm,
rifle or shotgun; or

§ 33.  Sections  34,  35 and 36 of this act shall be known and may be
cited as "Mark's Law".

§ 34. The opening paragraph of subdivision 1 of section 125.26 of  the
penal  law,  as  added by chapter 765 of the laws of 2005, is amended to
read as follows:

With intent to cause the death of another person, he or she causes the
death of such person, or of a third person who was a person described in
subparagraph (i), (ii), (ii-a) or (iii) of paragraph (a) of this  subdi-
vision engaged  at  the time of the killing in the course of performing
his or her official duties; and

§ 35. Paragraph (a) of subdivision 1 of section 125.26 of  the  penal
law is amended by adding a new subparagraph (ii-a) to read as follows:

(ii-a) the intended victim was a firefighter, emergency medical tech-
nician,  ambulance  driver,  paramedic,  physician  or registered nurse
involved in a first response team, or any other  individual  who,  in  the
course  of  official  duties, performs emergency response activities and
was engaged in such activities at the time of killing and the  defendant
knew  or  reasonably should have known that the intended victim was such

                              17                    CHAP. 1

firefighter, emergency medical technician, ambulance driver, paramedic,
physician or registered nurse; or

§ 36. Paragraph (a) of subdivision 1 of section 125.27 of the penal
law is amended by adding a new subparagraph (ii-a) to read as follows:

(ii-a) the intended victim was a firefighter, emergency medical tech-
nician, ambulance driver, paramedic, physician or registered nurse
involved in a first response team, or any other individual who, in the
course of official duties, performs emergency response activities and
was engaged in such activities at the time of killing and the defendant
knew or reasonably should have known that the intended victim was such
firefighter, emergency medical technician, ambulance driver, paramedic,
physician or registered nurse; or

§ 37. Subdivision 22 of section 265.00 of the penal law, as added by
chapter 189 of the laws of 2000, is amended to read as follows:

22. "Assault weapon" means [~~(a) a semiautomatic rifle that has an~~
~~ability to accept a detachable magazine and has at least two of the~~
~~following characteristics:~~

~~(i) a folding or telescoping stock;~~

~~(ii) a pistol grip that protrudes conspicuously beneath the action of~~
~~the weapon;~~

~~(iii) a bayonet mount;~~

~~(iv) a flash suppressor or threaded barrel designed to accommodate a~~
~~flash suppressor;~~

~~(v) a grenade launcher; or~~

~~(b) a semiautomatic shotgun that has at least two of the following~~
~~characteristics:~~

~~(i) a folding or telescoping stock;~~

~~(ii) a pistol grip that protrudes conspicuously beneath the action of~~
~~the weapon;~~

~~(iii) a fixed magazine capacity in excess of five rounds;~~

~~(iv) an ability to accept a detachable magazine; or~~

~~(c) a semiautomatic pistol that has an ability to accept a detachable~~
~~magazine and has at least two of the following characteristics:~~

~~(i) an ammunition magazine that attaches to the pistol outside of the~~
~~pistol grip;~~

~~(ii) a threaded barrel capable of accepting a barrel extender, flash~~
~~suppressor, forward handgrip, or silencer;~~

~~(iii) a shroud that is attached to, or partially or completely encir-~~
~~cles, the barrel and that permits the shooter to hold the firearm with~~
~~the nontrigger hand without being burned;~~

~~(iv) a manufactured weight of fifty ounces or more when the pistol is~~
~~unloaded;~~

~~(v) a semiautomatic version of an automatic rifle, shotgun or firearm;~~
~~or~~

~~(d) any of the weapons, or functioning frames or receivers of such~~
~~weapons, or copies or duplicates of such weapons, in any caliber, known~~
~~as:~~

~~(i) Norinco, Mitchell, and Poly Technologies Avtomat Kalashnikovs (all~~
~~models);~~

~~(ii) Action Arms Israeli Military Industries UZI and Galil;~~

~~(iii) Beretta Ar70 (SC-70);~~

~~(iv) Colt AR-15;~~

~~(v) Fabrique National FN/FAL, FN/LAR, and FNC;~~

~~(vi) SWD M-10, M-11, M-11/9, and M-12;~~

~~(vii) Steyr AUG;~~

~~(viii) INTRATEC TEC-9, TEC-DC9 and TEC-22; and~~

CHAP. 1                    18

(ix) revolving cylinder shotguns, such as (or similar to) the Street
Sweeper and Striker 12;
(e) provided, however, that such term does not include: (i) any rifle,
shotgun or pistol that (A) is manually operated by bolt, pump, lever or
slide action; (B) has been rendered permanently inoperable; or (C) is an
antique firearm as defined in 18 U.S.C. 921(a)(16);
(ii) a semiautomatic rifle that cannot accept a detachable magazine
that holds more than five rounds of ammunition;
(iii) a semiautomatic shotgun that cannot hold more than five rounds
of ammunition in a fixed or detachable magazine;
(iv) a rifle, shotgun or pistol, or a replica or a duplicate thereof,
specified in Appendix A to section 922 of 18 U.S.C. as such weapon was
manufactured on October first, nineteen hundred ninety-three. The mere
fact that a weapon is not listed in Appendix A shall not be construed to
mean that such weapon is an assault weapon; or
(v) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic
pistol or any of the weapons defined in paragraph (d) of this subdivi-
sion lawfully possessed prior to September fourteenth, nineteen hundred
ninety-four.]
(a) a semiautomatic rifle that has an ability to accept a detachable
magazine and has at least one of the following characteristics:
(i) a folding or telescoping stock;
(ii) a pistol grip that protrudes conspicuously beneath the action of
the weapon;
(iii) a thumbhole stock;
(iv) a second handgrip or a protruding grip that can be held by the
non-trigger hand;
(v) a bayonet mount;
(vi) a flash suppressor, muzzle break, muzzle compensator, or threaded
barrel designed to accommodate a flash suppressor, muzzle break, or
muzzle compensator;
(vii) a grenade launcher; or
(b) a semiautomatic shotgun that has at least one of the following
characteristics:
(i) a folding or telescoping stock;
(ii) a thumbhole stock;
(iii) a second handgrip or a protruding grip that can be held by the
non-trigger hand;
(iv) a fixed magazine capacity in excess of seven rounds;
(v) an ability to accept a detachable magazine; or
(c) a semiautomatic pistol that has an ability to accept a detachable
magazine and has at least one of the following characteristics:
(i) a folding or telescoping stock;
(ii) a thumbhole stock;
(iii) a second handgrip or a protruding grip that can be held by the
non-trigger hand;
(iv) capacity to accept an ammunition magazine that attaches to the
pistol outside of the pistol grip;
(v) a threaded barrel capable of accepting a barrel extender, flash
suppressor, forward handgrip, or silencer;
(vi) a shroud that is attached to, or partially or completely encir-
cles, the barrel and that permits the shooter to hold the firearm with
the non-trigger hand without being burned;
(vii) a manufactured weight of fifty ounces or more when the pistol is
unloaded; or

(viii) a semiautomatic version of an automatic rifle, shotgun or firearm;

(d) a revolving cylinder shotgun;

(e) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in subparagraph (v) of paragraph (e) of subdivision twenty-two of section 265.00 of this chapter as added by chapter one hundred eighty-nine of the laws of two thousand and otherwise lawfully possessed pursuant to such chapter of the laws of two thousand prior to September fourteenth, nineteen hundred ninety-four;

(f) a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in paragraph (a), (b) or (c) of this subdivision, possessed prior to the date of enactment of the chapter of the laws of two thousand thirteen which added this paragraph;

(g) provided, however, that such term does not include:

(i) any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in 18 U.S.C. 921(a)(16);

(ii) a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

(iii) a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine; or

(iv) a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to 18 U.S.C. 922 as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon;

(v) any weapon validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter. Such weapons shall be subject to the provisions of paragraph (h) of this subdivision;

(vi) any firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof that is validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter;

(h) Any weapon defined in paragraph (e) or (f) of this subdivision and any large capacity ammunition feeding device that was legally possessed by an individual prior to the enactment of the chapter of the laws of two thousand thirteen which added this paragraph, may only be sold to, exchanged with or disposed of to a purchaser authorized to possess such weapons or to an individual or entity outside of the state provided that any such transfer to an individual or entity outside of the state must be reported to the entity wherein the weapon is registered within seventy-two hours of such transfer. An individual who transfers any such weapon or large capacity ammunition device to an individual inside New York state or without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor unless such large capacity ammunition feeding device, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, is transferred within one year of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph.

§ 38. Subdivision 23 of section 265.00 of the penal law, as added by chapter 189 of the laws of 2000, is amended to read as follows:

23. "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, [manufactured after September thirteenth, nineteen hundred ninety-four,] that (a) has a capacity of, or that can be readily restored or converted to accept, more than ten

CHAP. 1                         20

rounds of ammunition**, or (b) contains more than seven rounds of ammunition, or (c) is obtained after the effective date of the chapter of the laws of two thousand thirteen which amended this subdivision and has a capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition**; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition **or a feeding device that is a curio or relic. A feeding device that is a curio or relic is defined as a device that (i) was manufactured at least fifty years prior to the current date, (ii) is only capable of being used exclusively in a firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof, (iii) is possessed by an individual who is not prohibited by state or federal law from possessing a firearm and (iv) is registered with the division of state police pursuant to subdivision sixteen-a of section 400.00 of this chapter, except such feeding devices transferred into the state may be registered at any time, provided they are registered within thirty days of their transfer into the state. Notwithstanding paragraph (h) of subdivision twenty-two of this section, such feeding devices may be transferred provided that such transfer shall be subject to the provisions of section 400.03 of this chapter including the check required to be conducted pursuant to such section**.

§ 39. Section 265.00 of the penal law is amended by adding a new subdivision 24 to read as follows:

**24. "Seller of ammunition" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling or keeping ammunition.**

§ 40. Section 265.01 of the penal law, as added by chapter 1041 of the laws of 1974, subdivision 1 as amended by chapter 257 of the laws of 2008, subdivision 2 as amended by chapter 220 of the laws of 1988, subdivision 3 as amended by chapter 199 of the laws of 2006, subdivision 4 as amended by chapter 357 of the laws of 2011, subdivision 7 as added by chapter 807 of the laws of 1981, and subdivision 8 as added by chapter 646 of the laws of 1986, is amended to read as follows:
§ 265.01 Criminal possession of a weapon in the fourth degree.

A person is guilty of criminal possession of a weapon in the fourth degree when:

(1) He or she possesses any firearm, electronic dart gun, electronic stun gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star"; or

(2) He possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another; or

(3) [~~He or she knowingly has in his or her possession a rifle, shotgun or firearm in or upon a building or grounds, used for educational purposes, of any school, college or university, except the forestry lands, wherever located, owned and maintained by the State University of New York college of environmental science and forestry, or upon a school bus as defined in section one hundred forty-two of the vehicle and traffic law, without the written authorization of such educational institution~~]; or

(4) He possesses a rifle, shotgun, antique firearm, black powder rifle, black powder shotgun, or any muzzle-loading firearm, and has been convicted of a felony or serious offense; or

21                          CHAP. 1

(5) He possesses any dangerous or deadly weapon and is not  a  citizen
of the United States; or
(6)  He  is  a person who has been certified not suitable to possess a
rifle or shotgun, as defined in subdivision sixteen of  section  265.00,
and refuses to yield possession of such rifle or shotgun upon the demand
of  a  police  officer.  Whenever a person is certified not suitable to
possess a rifle or shotgun, a member of the police department  to  which
such  certification  is  made,  or  of the state police, shall forthwith
seize any rifle or shotgun possessed by such person. A rifle or  shotgun
seized as herein provided shall not be destroyed, but shall be delivered
to  the  headquarters  of  such  police department, or state police, and
there retained until the aforesaid certificate has been rescinded by the
director or physician in charge, or other disposition of such  rifle  or
shotgun has been ordered or authorized by a court of competent jurisdic-
tion.
(7)  He knowingly possesses a bullet containing an explosive substance
designed to detonate upon impact.
(8) He possesses any armor piercing ammunition with intent to use  the
same unlawfully against another.
Criminal  possession  of  a  weapon  in the fourth degree is a class A
misdemeanor.
§ 41. The penal law is amended by adding a  new  section  265.01-a  to
read as follows:
§ 265.01-a. Criminal possession of a weapon on school grounds.
A  person  is  guilty  of  criminal  possession  of a weapon on school
grounds when he or she knowingly has in his or her possession  a  rifle,
shotgun,  or  firearm  in or upon a building or grounds, used for educa-
tional purposes, of any  school,  college,  or  university,  except  the
forestry  lands,  wherever  located,  owned  and maintained by the State
University of New York college of environmental science and forestry, or
upon a school bus as defined in section one  hundred  forty-two  of  the
vehicle  and  traffic  law,  without  the  written authorization of such
educational institution.
Criminal possession of a weapon on school grounds is a class E felony.
§ 41-a. The penal law is amended by adding a new section  265.01-b  to
read as follows:
§ 265.01-b Criminal possession of a firearm.
A  person is guilty of criminal possession of a firearm when he or she:
(1)  possesses any firearm or; (2) lawfully possesses a firearm prior to
the effective date of the chapter of the laws of two  thousand  thirteen
which  added  this  section  subject to the registration requirements of
subdivision sixteen-a of section 400.00 of this  chapter  and  knowingly
fails to register such firearm pursuant to such subdivision.
Criminal possession of a firearm is a class E felony.
§  41-b.  Subdivision 8 of section 265.02 of the penal law, as amended
by chapter 764 of the laws of 2005, is amended and two new  subdivisions
9 and 10 are added to read as follows:
(8)  Such person possesses a large capacity ammunition feeding device.
For purposes of this subdivision, a large  capacity  ammunition  feeding
device shall not include an ammunition feeding device lawfully possessed
by  such  person before the effective date of the chapter of the laws of
two thousand thirteen which amended this subdivision, that has a capaci-
ty of, or that can be readily restored or converted to accept more  than
seven  but  less  than eleven rounds of ammunition, or that was manufac-
tured before September thirteenth, nineteen  hundred  ninety-four,  that

CHAP. 1                          22

has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition; or

(9) Such person possesses an unloaded firearm and also commits a drug trafficking felony as defined in subdivision twenty-one of section 10.00 of this chapter as part of the same criminal transaction; or

(10) Such person possesses an unloaded firearm and also commits any violent felony offense as defined in subdivision one of section 70.02 of this chapter as part of the same criminal transaction.

§ 42. Subdivision 2 of section 265.09 of the penal law, as added by chapter 650 of the laws of 1996, is amended to read as follows:

(2) Sentencing. Notwithstanding any other provision of law to the contrary, when a person is convicted of criminal use of a firearm in the first degree as defined in subdivision one of this section, the court shall impose an additional consecutive sentence of five years to the [minimum term of an indeterminate] sentence imposed on the underlying class B violent felony offense where the person convicted of such crime displays a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged, in furtherance of the commission of such crime, provided, however, that such additional sentence shall not be imposed if the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, finds on the record that such additional consecutive sentence would be unduly harsh and that not imposing such sentence would be consistent with the public safety and would not deprecate the seriousness of the crime. Notwithstanding any other provision of law to the contrary, the aggregate of the five year consecutive term imposed pursuant to this subdivision and the minimum term of the indeterminate sentence imposed on the underlying class B violent felony shall constitute the new aggregate minimum term of imprisonment, and a person subject to such term shall be required to serve the entire aggregate minimum term and shall not be eligible for release on parole or conditional release during such term. This subdivision shall not apply where the defendant's criminal liability for displaying a loaded weapon from which a shot, readily capable of producing death or other serious injury may be discharged, in furtherance of the commission of crime is based on the conduct of another pursuant to section 20.00 of [the penal law] this chapter.

§ 43. Section 265.17 of the penal law, as added by chapter 189 of the laws of 2000, is amended to read as follows:

§ 265.17 Criminal purchase or disposal of a weapon.

A person is guilty of criminal purchase or disposal of a weapon when:

1. Knowing that he or she is prohibited by law from possessing a firearm, rifle or shotgun because of a prior conviction or because of some other disability which would render him or her ineligible to lawfully possess a firearm, rifle or shotgun in this state, such person [attempts to purchase] purchases a firearm, rifle or shotgun from another person; or

2. Knowing that it would be unlawful for another person to possess a firearm, rifle or shotgun, he or she purchases a firearm, rifle or shotgun, on behalf of, or for the use of such other person[.]; or

3. Knowing that another person is prohibited by law from possessing a firearm, rifle or shotgun because of a prior conviction or because of some other disability which would render him or her ineligible to lawfully possess a firearm, rifle or shotgun in this state, a person disposes of a firearm, rifle or shotgun to such other person.

                           23                        CHAP. 1

Criminal purchase **or disposal** of a weapon is a class [~~A misdemeanor~~] **D felony**.

§ 44. Intentionally omitted.

§ 45. The penal law is amended by adding a new section 265.19 to read as follows:

**§ 265.19 Aggravated criminal possession of a weapon.**

**A person is guilty of aggravated criminal possession of a weapon when he or she commits the crime of criminal possession of a weapon in the second degree as defined in subdivision three of section 265.03 of this article and also commits any violent felony offense as defined in subdivision one of section 70.02 of this chapter or a drug trafficking felony as defined in subdivision twenty-one of section 10.00 of this chapter arising out of the same criminal transaction.**

**Aggravated criminal possession of a weapon is a class C felony.**

§ 46. Paragraph 3 of subdivision a of section 265.20 of the penal law, as amended by chapter 210 of the laws of 1999, is amended and a new paragraph 7-f is added to read as follows:

3. Possession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00 or 400.01 of this chapter **or possession of a weapon as defined in paragraph (e) or (f) of subdivision twenty-two of section 265.00 of this article which is registered pursuant to paragraph (a) of subdivision sixteen-a of section 400.00 of this chapter or is included on an amended license issued pursuant to section 400.00 of this chapter. In the event such license is revoked, other than because such licensee is no longer permitted to possess a firearm, rifle or shotgun under federal or state law, information sufficient to satisfy the requirements of subdivision sixteen-a of section 400.00 of this chapter, shall be transmitted by the licensing officer to the state police, in a form as determined by the superintendent of state police. Such transmission shall constitute a valid registration under such section. Further provided, notwithstanding any other section of this title, a failure to register such weapon by an individual who possesses such weapon before the enactment of the chapter of the laws of two thousand thirteen which amended this paragraph and may so lawfully possess it thereafter upon registration, shall only be subject to punishment pursuant to paragraph (c) of subdivision sixteen-a of section 400.00 of this chapter**; provided, that such a license **or registration** shall not preclude a conviction for the offense defined in subdivision three of section 265.01 of this article **or section 265.01-a of this article**.

**7-f. Possession and use of a magazine, belt, feed strip or similar device, that contains more than seven rounds of ammunition, but that does not have a capacity of or can readily be restored or converted to accept more than ten rounds of ammunition, at an indoor or outdoor firing range located in or on premises owned or occupied by a duly incorporated organization organized for conservation purposes or to foster proficiency in arms; at an indoor or outdoor firing range for the purpose of firing a rifle or shotgun; at a collegiate, olympic or target shooting competition under the auspices of or approved by the national rifle association; or at an organized match sanctioned by the International Handgun Metallic Silhouette Association.**

§ 46-a. The penal law is amended by adding two new sections 265.36 and 265.37 to read as follows:

**§ 265.36 Unlawful possession of a large capacity ammunition feeding device.**

It shall be unlawful for a person to knowingly possess a large capaci-
ty ammunition feeding device manufactured before September thirteenth,
nineteen hundred ninety-four, and if such person lawfully possessed such
large capacity feeding device before the effective date of the chapter
of the laws of two thousand thirteen which added this section, that has
a capacity of, or that can be readily restored or converted to accept,
more than ten rounds of ammunition.

An individual who has a reasonable belief that such device is of such
a character that it may lawfully be possessed and who surrenders or
lawfully disposes of such device within thirty days of being notified by
law enforcement or county licensing officials that such possession is
unlawful shall not be guilty of this offense. It shall be a rebuttable
presumption that such person knows that such large capacity ammunition
feeding device may not be lawfully possessed if he or she has been
contacted by law enforcement or county licensing officials and informed
that such device may not be lawfully possessed.

Unlawful possession of a large capacity ammunition feeding device is a
class A misdemeanor.
§ 265.37 Unlawful possession of certain ammunition feeding devices.

It shall be unlawful for a person to knowingly possess an ammunition
feeding device that such person lawfully possessed before the effective
date of the chapter of the laws of two thousand thirteen which added
this section, that has a capacity of, or that can be readily restored or
converted to accept more than seven but less than ten rounds of ammuni-
tion, where such device contains more than seven rounds of ammunition.

If such device containing more than seven rounds of ammunition is
possessed within the home of the possessor, the person so possessing the
device shall, for a first offense, be guilty of a violation and subject
to a fine of two hundred dollars, and for a second offense, be guilty of
a class B misdemeanor and subject to a fine of two hundred dollars and a
term of up to three months imprisonment.

If such device containing more than seven rounds of ammunition is
possessed in any location other than the home of the possessor, the
person so possessing the device shall, for a first offense, be guilty of
a class B misdemeanor and subject to a fine of two hundred dollars and a
term of up to six months imprisonment, and for a second offense, be
guilty of a class A misdemeanor.

§ 47. The penal law is amended by adding a new section 265.45 to read
as follows:
§ 265.45 Safe storage of rifles, shotguns, and firearms.

No person who owns or is custodian of a rifle, shotgun or firearm who
resides with an individual who such person knows or has reason to know
is prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g)
(1), (4), (8) or (9) shall store or otherwise leave such rifle, shotgun
or firearm out of his or her immediate possession or control without
having first securely locked such rifle, shotgun or firearm in an appro-
priate safe storage depository or rendered it incapable of being fired
by use of a gun locking device appropriate to that weapon. For purposes
of this section "safe storage depository" shall mean a safe or other
secure container which, when locked, is incapable of being opened with-
out the key, combination or other unlocking mechanism and is capable of
preventing an unauthorized person from obtaining access to and
possession of the weapon contained therein. With respect to a person
who is prohibited from possessing a firearm pursuant to 18 USC §
922(g)(9), for purposes of this section, this section applies only if
such person has been convicted of a crime included in subdivision one of

section 370.15 of the criminal procedure law and such gun is possessed within five years from the later of the date of conviction or completion of sentence.

 A violation of this section shall constitute a class A misdemeanor.

 § 48.  Subdivision 1, paragraph (a) of subdivision 3, subdivisions 4, 5, 9, 10, 11, 12 and 15 of section 400.00 of the penal law, subdivision 1 as amended by chapter 189 of the laws of 2000, paragraph (a) of subdivision 3 as designated by chapter 778 of the laws of 1985, subdivision 4 as amended by chapter 331 of the laws of 2005, subdivision 5 as amended by chapter 332 of the laws of 1994, subdivision 9 as amended by chapter 172 of the laws of 1973, subdivision 10 as amended by chapter 447 of the laws of 1997, subdivision 11 as amended by chapter 210 of the laws of 1999, and subdivision 12 as amended by chapter 449 of the laws of 1993, are amended and two new subdivisions 16-a and 16-b are added to read as follows:

 1. Eligibility. No license shall be issued or renewed pursuant to this section except by the licensing officer, and then only after investigation and finding that all statements in a proper application for a license are true. No license shall be issued or renewed except for an applicant (a) twenty-one years of age or older, provided, however, that where such applicant has been honorably discharged from the United States army, navy, marine corps, air force or coast guard, or the national guard of the state of New York, no such age restriction shall apply; (b) of good moral character; (c) who has not been convicted anywhere of a felony or a serious offense; (d) who is not a fugitive from justice; (e) who is not an unlawful user of or addicted to any controlled substance as defined in section 21 U.S.C. 802; (f) who being an alien (i) is not illegally or unlawfully in the United States or (ii) has not been admitted to the United States under a nonimmigrant visa subject to the exception in 18 U.S.C. 922(y)(2); (g) who has not been discharged from the Armed Forces under dishonorable conditions; (h) who, having been a citizen of the United States, has not renounced his or her citizenship; (i) who has stated whether he or she has ever suffered any mental illness [or been confined to any hospital or institution, public or private, for mental illness]; (j) who has not been involuntarily committed to a facility under the jurisdiction of an office of the department of mental hygiene pursuant to article nine or fifteen of the mental hygiene law, article seven hundred thirty or section 330.20 of the criminal procedure law, section four hundred two or five hundred eight of the correction law, section 322.2 or 353.4 of the family court act, or has not been civilly confined in a secure treatment facility pursuant to article ten of the mental hygiene law; [(e)] (k) who has not had a license revoked or who is not under a suspension or ineligibility order issued pursuant to the provisions of section 530.14 of the criminal procedure law or section eight hundred forty-two-a of the family court act; [(f)] (l) in the county of Westchester, who has successfully completed a firearms safety course and test as evidenced by a certificate of completion issued in his or her name and endorsed and affirmed under the penalties of perjury by a duly authorized instructor, except that: (i) persons who are honorably discharged from the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York, and produce evidence of official qualification in firearms during the term of service are not required to have completed those hours of a firearms safety course pertaining to the safe use, carrying, possession, maintenance and storage of a firearm; and (ii) persons who were licensed to possess a pistol or revolver prior to the

CHAP. 1                            26

effective  date  of  this paragraph are not required to have completed a
firearms safety course and test; [and (g)] (m) who has not had a guardi-
an appointed for him or her pursuant to  any  provision  of  state  law,
based  on  a determination that as a result of marked subnormal intelli-
gence, mental illness, incapacity, condition or disease, he or she lacks
the mental capacity to contract or manage his or her  own  affairs;  and
(n)  concerning whom no good cause exists for the denial of the license.
No person shall engage in the business of gunsmith or dealer in firearms
unless licensed pursuant to this section. An applicant to engage in such
business shall also be a citizen of the United States, more  than  twen-
ty-one  years  of  age  and  maintain a place of business in the city or
county where the license is issued. For such business, if the  applicant
is  a  firm or partnership, each member thereof shall comply with all of
the requirements set forth in this subdivision and if the applicant is a
corporation, each officer thereof shall so comply.
  (a) Applications shall be made and renewed, in the case of  a  license
to  carry  or  possess a pistol or revolver, to the licensing officer in
the city or county, as the case may be, where the applicant resides,  is
principally  employed  or  has his or her principal place of business as
merchant or storekeeper; and, in the case of a license as  gunsmith  or
dealer  in  firearms, to the licensing officer where such place of busi-
ness is located. Blank applications shall, except in  the  city  of  New
York,  be approved as to form by the superintendent of state police.  An
application shall state the full name, date of birth, residence, present
occupation of each person or individual signing the same, whether or not
he or she is a citizen of the United States, whether or not  he  or she
complies  with each requirement for eligibility specified in subdivision
one of this section and such other facts as may be required to show  the
good  character,  competency  and integrity of each person or individual
signing the application. An application shall be signed and verified  by
the  applicant.  Each  individual  signing an application shall submit one
photograph of himself or herself and a duplicate for each required  copy
of the application. Such photographs shall have been taken within thirty
days  prior  to filing the application. In case of a license as gunsmith
or dealer in firearms, the photographs submitted  shall  be  two  inches
square,  and the application shall also state the previous occupation of
each individual signing the same and the location of the place  of  such
business,  or  of the bureau, agency, subagency, office or branch office
for which the license is sought, specifying the name of the  city,  town
or  village,  indicating the street and number and otherwise giving such
apt description as to point out reasonably the location thereof. In such
case, if the applicant is a firm, partnership or corporation, its  name,
date  and  place  of formation, and principal place of business shall be
stated. For such firm or partnership, the application  shall  be  signed
and  verified  by  each individual composing or intending to compose the
same, and for such corporation, by each officer thereof.
  4. Investigation. Before a license is issued or renewed, there  shall
be an investigation of all statements required in the application by the
duly  constituted police authorities of the locality where such applica-
tion is made, including but not limited to such records as may be acces-
sible to the division of state police or division of  criminal  justice
services  pursuant to section 400.02 of this article.  For that purpose,
the records of the  appropriate  office  of  the  department  of  mental
hygiene  concerning  previous or present mental illness of the applicant
shall be available for inspection by the investigating  officer  of  the
police  authority.  In order to ascertain any previous criminal record,

the investigating officer shall take the fingerprints and physical
descriptive data in quadruplicate of each individual by whom the appli-
cation is signed and verified. Two copies of such fingerprints shall be
taken on standard fingerprint cards eight inches square, and one copy
may be taken on a card supplied for that purpose by the federal bureau
of investigation; provided, however, that in the case of a corporate
applicant that has already been issued a dealer in firearms license and
seeks to operate a firearm dealership at a second or subsequent
location, the original fingerprints on file may be used to ascertain any
criminal record in the second or subsequent application unless any of
the corporate officers have changed since the prior application, in
which case the new corporate officer shall comply with procedures
governing an initial application for such license. When completed, one
standard card shall be forwarded to and retained by the division of
criminal justice services in the executive department, at Albany. A
search of the files of such division and written notification of the
results of the search to the investigating officer shall be made without
unnecessary delay. Thereafter, such division shall notify the licensing
officer and the executive department, division of state police, Albany,
of any criminal record of the applicant filed therein subsequent to the
search of its files. A second standard card, or the one supplied by the
federal bureau of investigation, as the case may be, shall be forwarded
to that bureau at Washington with a request that the files of the bureau
be searched and notification of the results of the search be made to the
investigating police authority. [~~The failure or refusal of the federal~~
~~bureau of investigation to make the fingerprint check provided for in~~
~~this section shall not constitute the sole basis for refusal to issue a~~
~~permit pursuant to the provisions of this section.~~] Of the remaining two
fingerprint cards, one shall be filed with the executive department,
division of state police, Albany, within ten days after issuance of the
license, and the other remain on file with the investigating police
authority. No such fingerprints may be inspected by any person other
than a peace officer, who is acting pursuant to his special duties, or a
police officer, except on order of a judge or justice of a court of
record either upon notice to the licensee or without notice, as the
judge or justice may deem appropriate. Upon completion of the investi-
gation, the police authority shall report the results to the licensing
officer without unnecessary delay.

  5. Filing of approved applications. **(a)** The application for any
license, if granted, shall be filed by the licensing officer with the
clerk of the county of issuance, except that in the city of New York
and, in the counties of Nassau and Suffolk, the licensing officer shall
designate the place of filing in the appropriate division, bureau or
unit of the police department thereof, and in the county of Suffolk the
county clerk is hereby authorized to transfer all records or applica-
tions relating to firearms to the licensing authority of that county.
[~~The~~] **Except as provided in paragraphs (b) through (f) of this subdivi-
sion, the** name and address of any person to whom an application for any
license has been granted shall be a public record. Upon application by a
licensee who has changed his place of residence such records or applica-
tions shall be transferred to the appropriate officer at the licensee's
new place of residence. A duplicate copy of such application shall be
filed by the licensing officer in the executive department, division of
state police, Albany, within ten days after issuance of the license.
**The superintendent of state police may designate that such application
shall be transmitted to the division of state police electronically. In**

CHAP. 1                    28

the event the superintendent of the division of state police  determines
that it lacks any of the records required to be filed with the division,
it  may  request  that such records be provided to it by the appropriate
clerk,  department  and authority and such clerk, department or authority
shall provide the division with such records. In the event  such  clerk,
department or authority lacks such records, the division may request the
license  holder provide information sufficient to constitute such record
and such license holder shall provide the division with  such  informa-
tion.   Such information shall be limited to the license holder's name,
date of birth,race, residential address, social security  number
and  firearms possessed by said license holder. Nothing in this subdivi-
sion shall be construed to change the expiration date or  term  of  such
licenses  if  otherwise provided for in  law.  Records assembled  or
collected for purposes of inclusion in the database established by  this
section  shall be released pursuant to a court order.  Records assembled
or collected for purposes of inclusion in the database created  pursuant
to  section  400.02 of  this chapter shall not be subject to disclosure
pursuant to article six of the public officers law.

   (b) Each application for a license pursuant to paragraph (a) of  this
subdivision  shall  include,  on a separate written form prepared by the
division of state police within thirty days of the effective date of the
chapter of the  laws  of  two  thousand  thirteen,  which  amended  this
section,  and provided to the applicant at the same time and in the same
manner as the application for a license, an opportunity for  the  appli-
cant  to  request  an  exception from his or her application information
becoming public record pursuant to paragraph (a)  of  this  subdivision.
Such  forms,  which  shall also be made available to individuals who had
applied for or been granted a license prior to the effective date of the
chapter of the laws of two thousand thirteen which amended this section,
shall notify applicants that, upon discovery that an applicant knowingly
provided false information, such applicant may be subject  to  penalties
pursuant to section 175.30 of this chapter, and further, that his or her
request  for  an exception shall be null and void, provided that written
notice containing such  determination  is  provided  to  the  applicant.
Further, such forms shall provide each applicant an opportunity to spec-
ify  the  grounds  on  which  he  or she believes his or her application
information should not be publicly disclosed. These grounds, which shall
be identified on the application with a box beside each for checking, as
applicable, by the applicant, shall be as follows:

   (i) the applicant's life or safety may  be  endangered  by  disclosure
because:

   (A)  the applicant is an active or retired police officer, peace offi-
cer, probation officer, parole officer, or corrections officer;

   (B) the applicant is a protected person under a currently valid  order
of protection;

   (C) the applicant is or was a witness in a criminal proceeding involv-
ing a criminal charge;

   (D)  the  applicant  is  participating or previously participated as a
juror in a criminal proceeding, or is or was a member of a  grand  jury;
or

   (E) the applicant is a spouse, domestic partner or household member of
a  person  identified  in this subparagraph or subparagraph (ii) of this
paragraph, specifying which subparagraph or  subparagraphs  and  clauses
apply.

   (ii) the applicant has reason to believe his or her life or safety may
be endangered by disclosure due to reasons stated by the applicant.

(iii) the applicant has reason to believe he or she may be subject to unwarranted harassment upon disclosure of such information.

(c) Each form provided for recertification pursuant to paragraph (b) of subdivision ten of this section shall include an opportunity for the applicant to request an exception from the information provided on such form becoming public record pursuant to paragraph (a) of this subdivision. Such forms shall notify applicants that, upon discovery that an applicant knowingly provided false information, such applicant may be subject to penalties pursuant to section 175.30 of this chapter, and further, that his or her request for an exception shall be null and void, provided that written notice containing such determination is provided to the applicant. Further, such forms shall provide each applicant an opportunity to either decline to request the grant or continuation of an exception, or specify the grounds on which he or she believes his or her information should not be publicly disclosed. These grounds, which shall be identified in the application with a box beside each for checking, as applicable, by the applicant, shall be the same as provided in paragraph (b) of this subdivision.

(d) Information submitted on the forms described in paragraph (b) of this subdivision shall be excepted from disclosure and maintained by the entity retaining such information separate and apart from all other records.

(e) (i) Upon receiving a request for exception from disclosure, the licensing officer shall grant such exception, unless the request is determined to be null and void, pursuant to paragraph (b) or (c) of this subdivision.

(ii) A request for an exception from disclosure may be submitted at any time, including after a license or recertification has been granted.

(iii) If an exception is sought and granted pursuant to paragraph (b) of this subdivision, the application information shall not be public record, unless the request is determined to be null and void. If an exception is sought and granted pursuant to paragraph (c) of this subdivision, the information concerning such recertification application shall not be public record, unless the request is determined to be null and void.

(f) The information of licensees or applicants for a license shall not be disclosed to the public during the first one hundred twenty days following the effective date of the chapter of the laws of two thousand thirteen, which amended this section. After such period, the information of those who had applied for or been granted a license prior to the preparation of the form for requesting an exception, pursuant to paragraph (b) of this subdivision, may be released only if such individuals did not file a request for such an exception during the first sixty days following such preparation; provided, however, that no information contained in an application for licensure or recertification shall be disclosed by an entity that has not completed processing any such requests received during such sixty days.

(g) If a request for an exception is determined to be null and void pursuant to paragraph (b) or (c) of this subdivision, an applicant may request review of such determination pursuant to article seventy-eight of the civil practice laws and rules. Such proceeding must commence within thirty days after service of the written notice containing the adverse determination. Notice of the right to commence such a petition, and the time period therefor, shall be included in the notice of the determination. Disclosure following such a petition shall not be made prior to the disposition of such review.

CHAP. 1                                    30

9. License: amendment. Elsewhere than in the city of New York, a person licensed to carry or possess a pistol or revolver may apply at any time to his **or her** licensing officer for amendment of his **or her** license to include one or more such weapons or to cancel weapons held under license. If granted, a record of the amendment describing the weapons involved shall be filed by the licensing officer in the executive department, division of state police, Albany. **The superintendent of state police may authorize that such amendment be completed and transmitted to the state police in electronic form.** Notification of any change of residence shall be made in writing by any licensee within ten days after such change occurs, and a record of such change shall be inscribed by such licensee on the reverse side of his **or her** license. Elsewhere than in the city of New York, and in the counties of Nassau and Suffolk, such notification shall be made to the executive department, division of state police, Albany, and in the city of New York to the police commissioner of that city, and in the county of Nassau to the police commissioner of that county, and in the county of Suffolk to the licensing officer of that county, who shall, within ten days after such notification shall be received by him **or her**, give notice in writing of such change to the executive department, division of state police, at Albany.

10. License: expiration, certification and renewal. **(a)** Any license for gunsmith or dealer in firearms and, in the city of New York, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire not more than three years after the date of issuance. In the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not limited to expire on an earlier date fixed in the license, shall expire not more than five years after the date of issuance; however, in the county of Westchester, any such license shall be certified prior to the first day of April, two thousand, in accordance with a schedule to be contained in regulations promulgated by the commissioner of the division of criminal justice services, and every such license shall be recertified every five years thereafter. For purposes of this section certification shall mean that the licensee shall provide to the licensing officer the following information only: current name, date of birth, current address, and the make, model, caliber and serial number of all firearms currently possessed. Such certification information shall be filed by the licensing officer in the same manner as an amendment. Elsewhere than in the city of New York and the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not previously revoked or cancelled, shall be in force and effect until revoked as herein provided. Any license not previously cancelled or revoked shall remain in full force and effect for thirty days beyond the stated expiration date on such license. Any application to renew a license that has not previously expired, been revoked or cancelled shall thereby extend the term of the license until disposition of the application by the licensing officer. In the case of a license for gunsmith or dealer in firearms, in counties having a population of less than two hundred thousand inhabitants, photographs and fingerprints shall be submitted on original applications and upon renewal thereafter only at

31                                      CHAP. 1

six year intervals. Upon satisfactory proof that a currently valid
original license has been despoiled, lost or otherwise removed from the
possession of the licensee and upon application containing an additional
photograph of the licensee, the licensing officer shall issue a dupli-
cate license.

(b) All licensees shall be recertified to the division of state police
every five years thereafter. Any license issued before the effective
date of the chapter of the laws of two thousand thirteen which added
this paragraph shall be recertified by the licensee on or before January
thirty-first, two thousand eighteen, and not less than one year prior to
such date, the state police shall send a notice to all license holders
who have not recertified by such time. Such recertification shall be in
a form as approved by the superintendent of state police, which shall
request the license holder's name, date of birth, gender, race, residen-
tial address, social security number, firearms possessed by such license
holder, email address at the option of the license holder and an affir-
mation that such license holder is not prohibited from possessing
firearms. The form may be in an electronic form if so designated by the
superintendent of state police. Failure to recertify shall act as a
revocation of such license. If the New York state police discover as a
result of the recertification process that a licensee failed to provide
a change of address, the New York state police shall not require the
licensing officer to revoke such license.

   11. License: revocation and suspension. (a) The conviction of a licen-
see anywhere of a felony or serious offense or a licensee at any time
becoming ineligible to obtain a license under this section shall operate
as a revocation of the license. A license may be revoked or suspended as
provided for in section 530.14 of the criminal procedure law or section
eight hundred forty-two-a of the family court act. Except for a license
issued pursuant to section 400.01 of this article, a license may be
revoked and cancelled at any time in the city of New York, and in the
counties of Nassau and Suffolk, by the licensing officer, and elsewhere
than in the city of New York by any judge or justice of a court of
record; a license issued pursuant to section 400.01 of this article may
be revoked and cancelled at any time by the licensing officer or any
judge or justice of a court of record. The official revoking a license
shall give written notice thereof without unnecessary delay to the exec-
utive department, division of state police, Albany, and shall also noti-
fy immediately the duly constituted police authorities of the locality.

   (b) Whenever the director of community services or his or her designee
makes a report pursuant to section 9.46 of the mental hygiene law, the
division of criminal justice services shall convey such information,
whenever it determines that the person named in the report possesses a
license issued pursuant to this section, to the appropriate licensing
official, who shall issue an order suspending or revoking such license.

   (c) In any instance in which a person's license is suspended or
revoked under paragraph (a) or (b) of this subdivision, such person
shall surrender such license to the appropriate licensing official and
any and all firearms, rifles, or shotguns owned or possessed by such
person shall be surrendered to an appropriate law enforcement agency as
provided in subparagraph (f) of paragraph one of subdivision a of
section 265.20 of this chapter. In the event such license, firearm,
shotgun, or rifle is not surrendered, such items shall be removed and
declared a nuisance and any police officer or peace officer acting
pursuant to his or her special duties is authorized to remove any and
all such weapons.

CHAP. 1                          32

12. Records required of gunsmiths and dealers in firearms. Any person licensed as gunsmith or dealer in firearms shall keep a record book approved as to form, except in the city of New York, by the superintendent of state police. In the record book shall be entered at the time of every transaction involving a firearm the date, name, age, occupation and residence of any person from whom a firearm is received or to whom a firearm is delivered, and the calibre, make, model, manufacturer's name and serial number, or if none, any other distinguishing number or identification mark on such firearm. Before delivering a firearm to any person, the licensee shall require him to produce either a license valid under this section to carry or possess the same, or proof of lawful authority as an exempt person pursuant to section 265.20. In addition, before delivering a firearm to a peace officer, the licensee shall verify that person's status as a peace officer with the division of state police. After completing the foregoing, the licensee shall remove and retain the attached coupon and enter in the record book the date of such license, number, if any, and name of the licensing officer, in the case of the holder of a license to carry or possess, or the shield or other number, if any, assignment and department, unit or agency, in the case of an exempt person. The original transaction report shall be forwarded to the division of state police within ten days of delivering a firearm to any person, and a duplicate copy shall be kept by the licensee. **The superintendent of state police may designate that such record shall be completed and transmitted in electronic form. A dealer may be granted a waiver from transmitting such records in electronic form if the superintendent determines that such dealer is incapable of such transmission due to technological limitations that are not reasonably within the control of the dealer, or other exceptional circumstances demonstrated by the dealer, pursuant to a process established in regulation, and at the discretion of the superintendent. Records assembled or collected for purposes of inclusion in the database created pursuant to section 400.02 of this article shall not be subject to disclosure pursuant to article six of the public officers law.** The record book shall be maintained on the premises mentioned and described in the license and shall be open at all reasonable hours for inspection by any peace officer, acting pursuant to his special duties, or police officer. In the event of cancellation or revocation of the license for gunsmith or dealer in firearms, or discontinuance of business by a licensee, such record book shall be immediately surrendered to the licensing officer in the city of New York, and in the counties of Nassau and Suffolk, and elsewhere in the state to the executive department, division of state police.

15. Any violation by any person of any provision of this section is a class A misdemeanor.

**16-a. Registration. (a) An owner of a weapon defined in paragraph (e) or (f) of subdivision twenty-two of section 265.00 of this chapter, possessed before the date of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph, must make an application to register such weapon with the superintendent of state police, in the manner provided by the superintendent, or by amending a license issued pursuant to this section within one year of the effective date of this subdivision except any weapon defined under subparagraph (vi) of paragraph (g) of subdivision twenty-two of section 265.00 of this chapter transferred into the state may be registered at any time, provided such weapons are registered within thirty days of their transfer into the state. Registration information shall include the registrant's name, date of birth, gender, race, residential address, social**

security number and a description of each  weapon  being  registered.  A
registration  of any weapon defined under subparagraph (vi) of paragraph
(g) of subdivision twenty-two of section 265.00 or a feeding  device  as
defined under subdivision twenty-three of section 265.00 of this chapter
shall  be  transferable,  provided  that  the  seller notifies the state
police within seventy-two hours of the transfer and the  buyer  provides
the  state  police with information sufficient to constitute a registra-
tion under this section. Such registration shall not be  valid  if  such
registrant is prohibited or becomes prohibited from possessing a firearm
pursuant  to  state  or federal law.  The superintendent shall determine
whether such registrant is prohibited from possessing  a  firearm  under
state or federal law.  Such check shall be limited to determining wheth-
er the factors in 18 USC 922 (g) apply or  whether a registrant has been
convicted  of  a  serious offense as defined in subdivision sixteen-b of
section 265.00 of this chapter, so as to prohibit such  registrant  from
possessing  a  firearm, and whether a report has been issued pursuant to
section 9.46 of the mental hygiene law.  All registrants shall recertify
to the division of state police every five years thereafter.  Failure to
recertify shall result in a revocation of such registration.
  (b) The superintendent of state police shall create  and  maintain  an
internet  website to educate the public as to which semiautomatic rifle,
semiautomatic shotgun or semiautomatic pistol or weapon that are illegal
as a result of the enactment of the chapter of the laws of two  thousand
thirteen  which  added  this  paragraph, as well as such assault weapons
which are illegal pursuant to article two  hundred  sixty-five  of  this
chapter.  Such website shall contain information to assist the public in
recognizing the relevant features proscribed by such article two hundred
sixty-five, as well as which make and  model  of  weapons  that  require
registration.
  (c)  A person who knowingly fails to apply to register such weapon, as
required by this section, within one year of the effective date  of  the
chapter  of  the laws of two thousand thirteen which added this paragraph
shall be guilty of a class A misdemeanor and such person who unknowingly
fails to validly register such weapon within such one year period  shall
be  given  a  warning  by an appropriate law enforcement authority about
such failure and given thirty days in which to apply  to  register  such
weapon  or  to surrender it. A failure to apply or surrender such weapon
within such thirty-day period shall result in such weapon being  removed
by an appropriate law enforcement authority and declared a nuisance.
  16-b.  The cost of the software, programming and interface required to
transmit any record that must be electronically transmitted by the deal-
er or licensing officer to the division of state police pursuant to this
chapter shall be borne by the state.
  § 49. The penal law is amended by adding a new section 400.02 to  read
as follows:
§ 400.02 Statewide license and record database.
  There  shall be a statewide license and record database which shall be
created and maintained by the division of state police the cost of which
shall not be borne by any municipality.  Records assembled or  collected
for  purposes  of  inclusion  in  such database shall not be subject to
disclosure pursuant to article six of the public officers  law.  Records
containing granted license applications shall be periodically checked by
the  division  of criminal justice services against criminal conviction,
mental health, and all other records as are necessary to determine their
continued accuracy as well as whether  an  individual  is  no  longer  a
valid  license  holder.  The division of criminal justice services shall

also check pending applications made pursuant to this article against
such records to determine whether a license may be granted. All state
agencies shall cooperate with the division of criminal justice services,
as otherwise authorized by law, in making their records available for
such checks. The division of criminal justice services, upon determining
that an individual is ineligible to possess a license, or is no longer a
valid license holder, shall notify the applicable licensing official of
such determination and such licensing official shall not issue a license
or revoke such license and any weapons owned or possessed by such indi-
vidual shall be removed consistent with the provisions of subdivision
eleven of section 400.00 of this article. Local and state law enforce-
ment shall have access to such database, as otherwise authorized by law,
in the performance of their duties. Records assembled or collected for
purposes of inclusion in the database established by this section shall
be released pursuant to a court order.

§ 50. The penal law is amended by adding a new section 400.03 to read
as follows:

§ 400.03 Sellers of ammunition.

1. A seller of ammunition as defined in subdivision twenty-four of
section 265.00 of this chapter shall register with the superintendent of
state police in a manner provided by the superintendent. Any dealer in
firearms that is validly licensed pursuant to section 400.00 of this
article shall not be required to complete such registration.

2. Any seller of ammunition or dealer in firearms shall keep a record
book approved as to form by the superintendent of state police. In the
record book shall be entered at the time of every transaction involving
ammunition the date, name, age, occupation and residence of any person
from whom ammunition is received or to whom ammunition is delivered, and
the amount, calibre, manufacturer's name and serial number, or if none,
any other distinguishing number or identification mark on such ammuni-
tion. The record book shall be maintained on the premises mentioned and
described in the license and shall be open at all reasonable hours for
inspection by any peace officer, acting pursuant to his or her special
duties, or police officer. Any record produced pursuant to this section
and any transmission thereof to any government agency shall not be
considered a public record for purposes of article six of the public
officers law.

3. No later than thirty days after the superintendent of the state
police certifies that the statewide license and record database estab-
lished pursuant to section 400.02 of this article is operational for the
purposes of this section, a dealer in firearms licensed pursuant to
section 400.00 of this article, a seller of ammunition as defined in
subdivision twenty-four of section 265.00 of this chapter shall not
transfer any ammunition to any other person who is not a dealer in
firearms as defined in subdivision nine of such section 265.00 or a
seller of ammunition as defined in subdivision twenty-four of section
265.00 of this chapter, unless:

(a) before the completion of the transfer, the licensee or seller
contacts the statewide license and record database and provides the
database with information sufficient to identify such dealer or seller,
transferee based on information on the transferee's identification docu-
ment as defined in paragraph (c) of this subdivision, as well as the
amount, calibre, manufacturer's name and serial number, if any, of such
ammunition;

(b) the system provides the licensee or seller with a unique identifi-
cation number; and

(c) the transferor has verified the identity of the transferee by examining a valid state identification document of the transferee issued by the department of motor vehicles or if the transferee is not a resident of the state of New York, a valid identification document issued by the transferee's state or country of residence containing a photograph of the transferee.

4. If the database determines that the purchaser of ammunition is eligible to possess ammunition pursuant to state and federal laws, the system shall:

(a) assign a unique identification number to the transfer; and

(b) provide the licensee or seller with the number.

5. If the statewide license and record database notifies the licensee or seller that the information available to the database does not demonstrate that the receipt of ammunition by such other person would violate 18 U.S.C. 922(g) or state law, and the licensee transfers ammunition to such other person, the licensee shall indicate to the database that such transaction has been completed at which point a record of such transaction shall be created which shall be accessible by the division of state police and maintained for no longer than one year from point of purchase, which shall not be incorporated into the database established pursuant to section 400.02 of this article or the registry established pursuant to subdivision sixteen-a of section 400.00 of this article. The division of state police may share such information with a local law enforcement agency. Evidence of the purchase of ammunition is not sufficient to establish probable cause to believe that the purchaser has committed a crime absent other information tending to prove the commission of a crime. Records assembled or accessed pursuant to this section shall not be subject to disclosure pursuant to article six of the public officers law. This requirement of this section shall not apply (i) if a background check cannot be completed because the system is not operational as determined by the superintendent of state police, or where it cannot be accessed by the practitioner due to a temporary technological or electrical failure, as set forth in regulation, or (ii) a dealer or seller has been granted a waiver from conducting such background check if the superintendent of state police determines that such dealer is incapable of such check due to technological limitations that are not reasonably within the control of the dealer, or other exceptional circumstances demonstrated by the dealer, pursuant to a process established in regulation, and at the discretion of such superintendent.

6. If the superintendent of state police certifies that background checks of ammunition purchasers may be conducted through the national instant criminal background check system, use of that system by a dealer or seller shall be sufficient to satisfy subdivisions four and five of this section and such checks shall be conducted through such system, provided that a record of such transaction shall be forwarded to the state police in a form determined by the superintendent.

7. No commercial transfer of ammunition shall take place unless a licensed dealer in firearms or registered seller of ammunition acts as an intermediary between the transferor and the ultimate transferee of the ammunition for the purposes of contacting the statewide license and record database pursuant to this section. Such transfer between the dealer or seller, and transferee must occur in person.

8. A seller of ammunition who fails to register pursuant to this section and sells ammunition, for a first offense, shall be guilty of a violation and subject to the fine of one thousand dollars and for a second offense, shall be guilty of a class A misdemeanor.

CHAP. 1                        36

A seller of ammunition that fails to keep any record required pursuant
to this section, for a first offense shall be guilty of a violation and
subject  to  a  fine  of  five hundred dollars, and for a second offense
shall be guilty of a class B misdemeanor, and the registration of  such
seller shall be revoked.

§  51. Section 400.10 of the penal law, as added by chapter 531 of the
laws of 1984, and subdivision 1 as amended and subdivision 3 as added by
chapter 189 of the laws of 2000, is amended to read as follows:

§ 400.10 Report of theft or loss of a firearm, rifle or shotgun.

1. (a) Any owner or other person lawfully in possession of: (i)  a
firearm, rifle or, shotgun who suffers the loss or theft of said weapon;
(ii)  ammunition  as well as a firearm, rifle or shotgun who suffers the
loss or theft of such ammunition as well as a firearm, rifle or shotgun;
or (iii) ammunition and is a dealer in firearms or seller of  ammunition
who  suffers  the  loss or theft of such ammunition shall within twenty-
four hours of the discovery of the loss or theft report  the  facts  and
circumstances  of  the  loss or theft to a police department or sheriff's
office.

(b) Whenever a person reports the theft or loss of  a  firearm,  rifle
[or], shotgun or ammunition to any police  department or sheriff's
office, the officer or department receiving such report  shall  forward
notice of such theft or loss to the division of state police via the New
York  Statewide  Police  Information Network. The notice shall contain
information in compliance with the New York Statewide Police Information
Network Operating Manual, including the caliber, make,  model,  manufac-
turer's  name  and  serial  number, if any, and any other distinguishing
number or identification mark on the weapon.

2. The division of state police shall receive, collect and  file  the
information referred to in subdivision one of this section. The division
shall  cooperate,  and  undertake  to  furnish  or make available to law
enforcement agencies this information, for the purpose of  coordinating
law enforcement efforts to locate such weapons.

3.  Notwithstanding  any  other provision of law, a violation of para-
graph (a) of subdivision one of this section shall be [punishable  only
by a fine not to exceed one hundred dollars] a class A misdemeanor.

§  52. The penal law is amended by adding a new section 460.22 to read
as follows:

§ 460.22 Aggravated enterprise corruption.

A person is guilty of aggravated enterprise corruption when he or  she
commits  the  crime of enterprise corruption and two or more of the acts
that constitute his or her pattern of  criminal  activity  are  class  B
felonies  or higher, and at least two acts are armed felonies as defined
in paragraph (a) of subdivision forty-one of section 1.20 of the  crimi-
nal  procedure  law  or one act is such an armed felony and one act is a
violation of subdivision two of section 265.17 of this  chapter  or  one
act  is  a  class B violent felony and two are violations of subdivision
two of section 265.17 of this chapter.

Aggravated enterprise corruption is a class A-I felony.

§ 53. The surrogate's court procedure act is amended by adding  a  new
section 2509 to read as follows:

§ 2509. Firearms inventory

Whenever,  by  regulation, rule or statute, a fiduciary or attorney of
record must file a list of assets constituting a decedent's estate, such
list must include a particularized description of every firearm, shotgun
and rifle, as such terms are defined in section 265.00 of the penal law,
that are part of such estate. Such list must be filed with the  surro-

gate's court in the county in which the estate proceeding, if any, is pending and a copy must be filed with the division of criminal justice services.

§ 54. Section 18 of chapter 408 of the laws of 1999, constituting Kendra's Law, as amended by chapter 139 of the laws of 2010, is amended to read as follows:

§ 18. This act shall take effect immediately, provided that section fifteen of this act shall take effect April 1, 2000, provided, further, that subdivision (e) of section 9.60 of the mental hygiene law as added by section six of this act shall be effective 90 days after this act shall become law; and that this act shall expire and be deemed repealed June 30, [2015] 2017.

§ 55. The education law is amended by adding a new section 2801-b to read as follows:

§ 2801-b. New York state school safety improvement teams. The governor shall establish New York state school safety improvement teams, which may be composed of representatives from the division of homeland security and emergency services, the division of state police, the division of criminal justice services, and the department. Such New York State School Safety Improvement Teams shall review and assess school safety plans submitted, on a voluntary basis, by school districts having a population of less than one hundred twenty-five thousand inhabitants, boards of cooperative educational services, and county vocational education and extension boards, and may make recommendations to improve such school safety plans.

§ 56. Subdivision 6-c of section 3602 of the education law, as amended by section 1 of part A-2 of chapter 62 of the laws of 2003, is amended to read as follows:

6-c. a. Building aid for metal detectors, and safety devices for electrically operated partitions, room dividers and doors. In addition to the apportionments payable to a school district pursuant to subdivision six of this section, the commissioner is hereby authorized to apportion to any school district additional building aid pursuant to this subdivision for its approved expenditures in the base year for the purchase of stationary metal detectors, security cameras, safety devices for electrically operated partitions and room dividers required pursuant to section four hundred nine-f of this chapter, or other security devices approved by the commissioner that increase the safety of students and school personnel, provided, however, that funds apportioned to school districts pursuant to this section shall not supplant funds for existing district expenditures or for existing contractual obligations of the district for stationary metal detectors, security cameras, partition and room divider safety devices, or security devices. Portable or hand held metal detectors shall not be eligible for aid pursuant to this subdivision. Such additional aid shall equal the product of the building aid ratio computed for use in the current year pursuant to paragraph c of subdivision six of this section and the actual approved expenditures incurred in the base year pursuant to this subdivision, provided that the limitations on cost allowances prescribed by paragraph a of subdivision six of this section shall not apply. The commissioner shall annually prescribe a special cost allowance for metal detectors, and security cameras, and the approved expenditures shall not exceed such cost allowance. The commissioner shall annually prescribe a special cost allowance for partition and room divider safety devices, and the approved expenditures shall not exceed such cost allowance.

CHAP. 1                              38

b. For projects approved by the commissioner authorized to receive additional building aid pursuant to this subdivision for the purchase of stationary metal detectors, security cameras or other security devices approved by the commissioner that increase the safety of students and school personnel, provided that for purposes of this paragraph such other security devices shall be limited to electronic security systems and hardened doors, and provided that for projects approved by the commissioner on or after the first day of July two thousand thirteen and before the first day of July two thousand sixteen such additional aid shall equal the product of (i) the building aid ratio computed for use in the current year pursuant to paragraph c of subdivision six of this section plus ten percentage points, except that in no case shall this amount exceed one hundred percent, and (ii) the actual approved expenditures incurred in the base year pursuant to this subdivision, provided that the limitations on cost allowances prescribed by paragraph a of subdivision six of this section shall not apply, and provided further that any projects aided under this paragraph must be included in a district's school safety plan. The commissioner shall annually prescribe a special cost allowance for metal detectors, and security cameras, and the approved expenditures shall not exceed such cost allowance.

§ 57. Severability. If any clause, sentence, paragraph, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid and after exhaustion of all further judicial review, the judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part of this act directly involved in the controversy in which the judgment shall have been rendered.

§ 58. This act shall take effect immediately; provided, however, that:

a. Sections one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, twenty-six-a, twenty-seven, twenty-eight, twenty-nine, thirty, thirty-one, thirty-two, thirty-three, thirty-four, thirty-five, thirty-six, thirty-nine, forty, forty-one, forty-one-a, forty-one-b, forty-two, forty-three, forty-five, forty-six, forty-six-a, forty-seven, fifty-one, fifty-two, fifty-three, fifty-four, fifty-five, and fifty-six of this act shall take effect on the sixtieth day after it shall have become a law;

b. The amendments to subdivision 23 of section 265.00 of the penal law made by section thirty-eight of this act shall take effect on the ninetieth day after this act shall have become a law, except that the amendments made to paragraph (a) of subdivision 23 shall take effect immediately;

c. The amendments to subdivision 1, paragraph (a) of subdivision 3, and subdivisions 4, 9, 10, 11, 12, 15, and 16-b of section 400.00 of the penal law made by section forty-eight of this act shall take effect one year after this act shall have become a law;

d. The amendments to subdivision 16-a of section 400.00 of the penal law made by section forty-eight of this act shall take effect on the ninetieth day after this act shall have become a law;

e. The amendments to sections 400.02 and 400.03 of the penal law made by sections forty-nine and fifty of this act shall take effect one year after it shall have become a law; and

f. The amendments to subdivision (b) of section 9.47 and sections 9.48 and 9.60 of the mental hygiene law made by sections twenty-one, twenty-two and twenty-three of this act shall not affect the expiration and

repeal of such paragraph and sections and shall be deemed repealed ther-
ewith.

The Legislature of the STATE OF NEW YORK **ss:**
  Pursuant to the authority vested in us by section 70-b of the Public
Officers Law, we hereby jointly certify that this slip copy of this
session law was printed under our direction and, in accordance with such
section, is entitled to be read into evidence.

    DEAN G. SKELOS                         SHELDON SILVER
**Temporary President of the Senate**          **Speaker of the Assembly**