# EXHIBIT C

# *Guide to*

# **The New York Safe Act**

## *for*

# *Members of the Division of State Police*



*Prepared by*

The Office of Division Counsel

*September, 2013*

# NY State Police Guide to the Safe Act

*September, 2013*

**Safe Act Introduction and Summary** ...............................................................................................1

**I.   Statewide Database** ......................................................................................................2

**II.   Assault Weapons** ........................................................................................................3

    Definition of "Assault Weapon" ....................................................................................3

    Registration Requirements ..............................................................................................4

    Restrictions on Transfers ................................................................................................4

    Applicable Criminal Charges .........................................................................................4

    Effect on Police ..............................................................................................................5

        Serving Police Officers .......................................................................................5

        Retired Police Officers ........................................................................................5

        Assault Weapon Denial Procedures ...................................................................6

**III.  Magazines** ...................................................................................................................7

    Capacity .........................................................................................................................7

    New PL 265.36. Unlaful Possession of a Large Capacity Feeding Device ........................7

    Relationship  between PL 265.36 and PL 400.00 .............................................................8

    Tubular Devices / Curios and Relics ..............................................................................8

    New PL 265.37 - Loading with More than 7 Rounds.........................................................9

    Effect on Police ..............................................................................................................9

**IV.  Private Sales** .............................................................................................................11

    General Business Law New Article 39-DDD .................................................................11

    Immediate Family Exemption ......................................................................................11

    Potential Charges...........................................................................................................11

    Effect on Police ............................................................................................................11

**V.   Pistol Permits** ...........................................................................................................12

    Recertification Requirement.........................................................................................12

    Opt Out Forms  / Public Disclosure..............................................................................12

    Effect on Police ............................................................................................................12

**VI.**     **Mental Hygiene Law - 9.46 Referral**..................................................................................13

**VII.**    **New Crimes (Penal Law and General Business Law)**..............................................13

**Appendix:**     **Index of Crimes and Offenses Related to the NY Safe Act** ........................16

## INTRODUCTION

The NY SAFE Act, signed into law by Governor Cuomo on January 15, 2013, amended various provision of New York law in relation to firearms, long guns, assault weapons and ammunition. The Act was intended to enhance public safety by:

- Expanding the classification of those weapons considered to be Assault Weapons and restricting their access, possession and transfer.

- Providing safeguards, through the implementation of a new statewide database, to help ensure that individuals who are not qualified to possess certain weapons or ammunition do not obtain access to them.

- Restricting the types of magazines that individuals are allowed to possess and limiting the number of rounds permitted to be loaded in a magazine.

- Extending the requirement of a NICS check, formerly applicable only to commercial sales, to private sales of firearms subject to certain exceptions.

- Requiring those with existing firearms licenses (pistol permits) to renew or recertify these permits every 5 years.

- Establishing several new penal law offenses and enhancing the penalties for existing offenses

- Exempting records relating to the Act from public disclosure and providing all permit holders and applicants with an opportunity to ensure that any county records relating to their individual permit or application will also be exempt from the NY State FOIL provisions.

As with many large legislative initiatives, the SAFE Act has raised questions from members of the field relating to the scope of the Act and its effect on those police officers who will have the responsibility to enforce the various provisions. The purpose of this guide is to provide guidance to police officers regarding the enforcement of the Safe Act's provisions.

# I.    THE STATEWIDE DATABASE

The SAFE Act requires the creation of a statewide license and record database[1], through which records will be checked in order to determine whether or not a particular applicant or licensee is or remains qualified to possess a firearm or to register an Assault Weapon.

Disqualifiers will include traditional criteria, such as not being convicted of a crime or serious offense, and new criteria established by the Act, such as expanding the situations where a court must suspend or revoke a subject's license pursuant to an Order of Protection or where the person has been the subject of a mental health professional's determination that he or she is likely to engage in dangerous behavior.

Database records will be checked when the subject applies for a firearm's license or when he or she seeks to register an Assault Weapon. The system will also continually run checks after the application or registration process and will detect if a licensee or registrant subsequently becomes unqualified.

The database will be maintained by the State Police and records assembled or collected for purposes of inclusion in the database are exempt from public disclosure laws. It is currently being assembled and is expected to be operational in 2014.

**EFFECT ON POLICE   (Database)**

Other than the personnel assigned to build and input data, there is no direct effect on law enforcement personnel. However, there will be an indirect effect in those cases where the applicant or registrant is disqualified because police officers may be assigned to secure weapons owned or possessed by a person who does not meet the qualification requirements.

> The Statewide Database is the common thread in all of the Safe Act provisions.  All of the eligibility checks for the various parts of the act will utilize this database.

---

[1] New Penal Law section 400.02.

NY State Police Guide to the Safe Act

## II.    ASSAULT WEAPONS

1.  **Definition:** The Safe Act redefined the term "Assault Weapon" and created
    registration requirements for those who lawfully owned them before the
    enactment of the statute.

    As of January 15, 2013, the term "Assault Weapon" has been redefined as:[2]

    - A semiautomatic rifle that has an ability to accept a detachable magazine and has at least one
      of  the following military characteristics:

        a.  Folding or Telescoping Stock
        b.  Protruding Pistol Grip
        c.  Thumbhole Stock
        d.  Second Handgrip or Protruding Grip that can be held by non-shooting hand
        e.  Bayonet Mount
        f.  Flash Suppressor
        g.  Muzzle Brake
        h.  Muzzle Compensator
        i.  A threaded barrel designed to accommodate the above
        j.  Grenade Launcher

    - A semiautomatic shotgun having at least one of the following characteristics:

        a.  Folding or Telescoping Stock
        b.  Thumbhole Stock
        c.  Second Handgrip or Protruding Grip that can be held by non-trigger hand
        d.  Fixed magazine capacity in excess of seven rounds
        e.  An ability to accept a detachable magazine

    - A semiautomatic pistol, able to accept a detachable magazine and has at least one of the
      following characteristics:

        a.  Folding or Telescoping Stock
        b.  Thumbhole Stock
        c.  Second Handgrip or Protruding Grip that can be held by non-trigger hand
        d.  Capacity to accept an ammunition magazine that attaches to the pistol outside the pistol
            grip
        e.  A threaded barrel capable of accepting a barrel extender, flash suppressor, forward hand
            grip or silencer
        f.  A shroud that is attached to, or partially or completely encircles, the barrel and that
            permits the shooter to hold the firearm with the non-trigger hand without being burned
        g.  A manufactured weight of fifty ounces or more when the pistol is unloaded

---

[2] There are some exceptions to this definition. For example a rifle, shotgun or pistol that is manually operated by bolt, pump,
lever or slide action, an antique firearm, and those firearms, rifles and shotguns made at least 50 years ago are not classified
as Assault Weapons. Officers seeking more specific information on these and other exceptions should check the information
on the Internet at  http://www.governor.ny.gov/nysafeact/gun-reform  or contact the state police Safe Act hotline at 1-855-
LAW-GUNS.

2. **Registration Requirements**

Anyone who lawfully possessed a weapon on or before January 15, 2013, that has been redefined as an Assault Weapon by the Act, may keep that weapon provided the person registers the weapon by April 15, 2014.  The registration process is a quick, simple and free procedure that can be conducted over the Internet. The web site is https://firearms.troopers.ny.gov/safeact/welcome.faces.

The registration for an assault weapon must be renewed every 5 years.

3. **Restrictions on Transfers**

Once registered, the person who registered it may keep the assault weapon for life, but may not transfer it to another unless the person he or she transfers it to is exempt from the law. There are no exceptions that allow a person to transfer an Assault Weapon to an immediate family member. Therefore, the owner of a registered assault weapon may only transfer it to a police officer, a firearms dealer or to a person in another state where possession of the weapon would be lawful.

4. **Applicable Criminal Charges: (Chargeable after April 15, 2014)**

> **Applies when a person lawfully possessed the assault weapon before January 15, 2013.**
>
> > **Failure to Register an Assault Weapon / PL 400.00 (16-a) (c)  (class A misdemeanor)**
> >
> > A person who knowingly fails to register by April 15, 2014, may be charged with PL section 400.00 (16-a) (c) / "Knowingly Failing to Register an Assault Weapon," a class A misdemeanor. This charge applies to a person who lawfully possessed the weapon prior to the Safe Act, knew that the weapon was of the type that must be registered and failed to register it.
>
> **Applies when the person did not lawfully possess the assault weapon before January 15, 2013.**
>
> > **Criminal Possession of a Weapon 3rd / PL 265.02 (7)   (class D felony)**
> > The only assault weapons that may be registered, and therefore, are exempt from the firearms laws are those that were lawfully possessed by the person before the Safe Act became law on January 15th, 2013. Therefore, a person who acquired an assault weapon after January 15th is subject to full criminal liability for possessing the weapon unless he or she is covered by one of the exemptions in PL 265.20.

## EFFECT ON POLICE  (Assault Weapons)

### A.   Serving Police Officers

While police officers may continue to legally purchase and possess Assault Weapons and Large Capacity Ammunition Feeding Devices under the former police exemption in Penal Law 265.20 (a) (1), this exemption only applies when the officer is an active police officer. Once a police officer retires, he or she is prohibited from possessing an Assault Weapon or Large Capacity Ammunition Feeding Devices unless he or she 1) is eligible to register it in the same manner as anyone else (i.e. it was made unlawful by the Safe Act, acquired by the officer before 1/15/13 and is registered by 4/15/14), or 2) meets the definition of a "Qualified Retired New York or Federal Law Enforcement Officer."

If the weapon was acquired by the officer after January 15, 2013, and the officer does not meet the requirements as a "Qualified Retired" officer (set forth below), he or she will not be able to possess the weapon while retired because there would be no authority to register an Assault Weapon acquired after that date. Likewise, if, by April 15, 2014, an officer had not registered an Assault Weapon that he or she possessed on or before January 15, 2013, and he or she does not qualify as a retired officer as set forth below, the officer would have lost the opportunity to keep the weapon after retirement.

### B.   Qualified Retired Enforcement Officers

A retired officer who meets the definition of a Qualified Retired New York or Federal Law Enforcement Officer may possess a registered assault weapon or large capacity magazine that would otherwise be unlawful if all of the following conditions are met:

1.  The officer **must be retired** and not merely separated from service.

2.  The weapon or magazine must have been issued to or **purchased by the officer** in the course of his or her official duties.

3.  The device must be **personally owned** by the officer at the time of retirement or he or she must own "**comparable replacements** for such devices;" and,

4.  The officer must have been **qualified by his or her agency** in the use of the weapon within the previous year before he or she retired; and,

5.  The retired officer must have qualified again within 3 years of retirement and within every 3 years thereafter. (If the officer had been retired for 18 months or more on January 15, 2013, he or she has until July 15, 2014 to meet these post retirement qualification standards. However, he or she must still have been qualified by the agency in the use of the weapon before retirement.)

5

**C.  Assault Weapon Denial Procedures – Law Enforcement Responsibilities**

In order to register an Assault Weapon, a person must be eligible to possess a rifle or shotgun.  During the registration process, checks will be run through federal and state databases to ensure that the person who is attempting to register is not prohibited from possessing a weapon. If a person fails this check, notice will be sent to the local law enforcement agency having jurisdiction so that the weapon(s) may be recovered from the individual who is determined to be ineligible.

If the person is determined to be ineligible because of a mental health disqualifier or due to an order of protection, the statute provides that he or she will be afforded the opportunity to arrange for the lawful transfer or sale of that weapon. The law enforcement agency assigned will secure the weapon for safekeeping until the person has made these arrangements in accordance with the procedure set forth in Penal Law 400.05 (6). If the subject fails to make these arrangements, the weapon automatically becomes a nuisance weapon and must be destroyed or rendered useless for its intended purpose.

If the person is determined to be ineligible due to a criminal conviction, the local law enforcement agency assigned will recover the weapon using whatever procedures are currently in place for members of that agency upon discovering that a convicted felon is unlawfully possessing a weapon. In such case, the weapon is automatically classified as a nuisance weapon and the weapon will be destroyed. Unlike the other situations, possession of any rifle or shotgun by a person who has been convicted of a felony or serious offense is a crime for which an arrest may be made. As such, there is no opportunity for the person to arrange for a lawful sale or transfer of the weapon.

---

A person who is denied due to a mental health disqualifier will have the opportunity to sell or transfer the weapon to a person who may lawfully possess it, such as a dealer.

---

## III.   MAGAZINES

### 1.   Capacity

Under the previous law, a magazine manufactured before September 13, 1994 was specifically exempted from the definition of large capacity ammunition feeding device in PL 265.00 (23). As such, a person with a pre-94 magazine could not be charged with the class D felony of Criminal Possession of a Weapon in the third degree under PL 265.02 (8).  This exemption has been removed by the Safe act.

However, the exemption has been relocated by the Safe Act and is now found in the body of PL 265.02 (8) itself.  It will now only exempt a person from criminal liability if the person acquired the magazine before January 15th, 2013. In other words, if someone obtains a pre-94 magazine now, of the same type that was formerly lawful under the old exemption, or obtained it anytime after the Safe Act became law on January 15th, that person could be charged with the class D felony under PL 265.02 (8) because the pre-94 exemption would not apply to him or her.

***Possession of some pre-94 magazines may not be felonies, but they are still illegal under the Safe Act.***

It is important to understand that the existence of the exemption in amended PL 265.02 (8) does not mean that possession of a pre-94 magazine with a capacity of more than 10 rounds is still lawful for those who legally possessed them before January 15, 2013. It is not. By taking the exemption out of the definition in 265.00 (23) and moving it to PL 265.02 (8), the legislature merely established a system that imposes a lesser penalty on those who retained their pre-94 magazines and did not modify them so that their capacity is 10 rounds or less.  To accomplish this, the Legislature created new Penal Law section 265.36 set forth below.

### 2.   New Penal Law section 265.36 / Unlawful Possession of a Large Capacity Ammunition Feeding Device / class A misdemeanor

This reduced charge only applies to those who, before January 15th, 2013, lawfully possessed an ammunition feeding device having a capacity of more than 10 rounds. Penal Law section 265.36 prohibits the knowing possession of these previously exempt magazines (manufactured before 1994 having a capacity of more than 10 rounds). A violation of this section is a class A misdemeanor.

### *But … there's a catch…*

If a person 1) **mistakenly believed** that possession of a pre-94 magazine was still legal; and if,  2) he or she either surrenders the magazine or lawfully disposes of it within 30 days after being notified by law enforcement or a county official that the magazine is unlawful, he or she may not be charged with this offense.  A person may lawfully dispose of the device by:

1. Transferring it to a dealer; or,

2. Transferring it to a person who is exempt from the statute, such as a police officer; or

3. Permanently modifying it to reduce its capacity to 10 rounds or less.

**3. Relationship between new Penal Law section 265.36 and amended Penal Law section 265.00 (22) (h).**

Although new Penal Law section 265.36, which became effective in March of 2013, indicates that a person could be charged with possession after the 30 day warning period has expired, new paragraph (h) of Penal Law section 265.00 (22) creates a grandfather provision that allows people to lawfully possess these magazines until January 15, 2014:

> *An individual who transfers any such large weapon or large capacity ammunition feeding device to an individual inside New York state without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor **unless such large capacity ammunition feeding device**, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, **is transferred within one year of the effective date of [the Safe Act].***

Because of this provision, new section 265.36 is not enforceable until after January 15, 2014. Even then, a person possessing one of these magazines should only be arrested if the police officer can show that the person knew that the magazine was unlawful. If the person has a reasonable, mistaken belief that the pre-94 magazine was lawful, he or she is entitled to the 30 day grace period with which to transfer it.

**4. Certain Tubular Devices / Curios and Relic Exemptions**

Possession of an ammunition feeding device that has a capacity of more than 10 rounds is still legal under the Safe Act if:

a. It is an attached **tubular device** designed to accept, and capable of operating only with .22 caliber rimfire ammunition; or,

b. It qualifies as a **curio or relic**. In order for a magazine to be a curio or relic it must:

   i. Have been manufactured at least 50 years prior to the current date; and,

   ii. Is capable of being used exclusively in a weapon that was manufactured at least 50 prior to the current date; and,

   iii. the possessor is not prohibited from possessing a firearm; and,

   iv. the magazine is registered with the State Police

8

Curios and relics may still be legally purchased and brought into the State but they must be registered within 30 days of their transfer into New York. The restrictions on transfers, applicable to Assault Weapons, do not apply to relics or curios.

**5. Possessing a magazine loaded with more than 7 rounds / New PL section 265.37**

Although a person may continue to possess magazines ***with a capacity of*** 10 rounds, the SAFE Act prohibits having more than 7 rounds loaded in any particular magazine. New Penal Law section 265.37 provides that it is unlawful for a person to knowingly possess an ammunition feeding device where such device contains more than seven rounds of ammunition.

**a.      Exception to the 7 Round Rule: Range and Sporting Events**

The Safe Act added a new subdivision 7-f to the exemptions in PL 265.20 to authorize the possession and use of a magazine containing 8, 9 or 10 rounds at a firing range, at a collegiate, Olympic or target shooting competition approved by the NRA, or at an organized match sanctioned by the International Handgun Metallic Silhouette Association.

**6.   Penalties (possessing more than 7 rounds in magazine) PL 265.37**

- If the violation occurs **within the home** of the person:

    1st offense = violation, subject to $200 fine

    Subsequent offense = class B misdemeanor / subject to $200 fine / up to three months imprisonment

- If the violation occurs in **any other location:**

    1st offense = class B misdemeanor / subject to $200 fine / up to six months imprisonment

    Subsequent offense = class A misdemeanor / up to one year imprisonment

**EFFECT ON POLICE (Magazine Laws)**

**A.    Police exemptions**

Police officers remain exempt from the provisions of 265.02 and may continue to possess large capacity ammunition feeding devices for as long as they are serving police officers. In addition, two new exemptions have been created to exempt police officers from the provisions of PL 265.36 (the new reduced charge for pre- 94 magazines) and PL 265.37 (loading with more than 7 rounds).

**B.**     **Visiting police officers from other states**

Police officers from other states who are conducting business within New York have been exempt from the laws relating to the possession of firearms and magazines under PL 265.20 (11). This exemption also covers the new crimes and offenses created by the Safe Act.

**C.**     **Retired police exemption**

For a discussion of the retired police exemption, see page 5.

**D.**     **Right to check and inspect magazines v. firearms**

Absent some indication of criminal activity, there is no right to inspect the contents of a magazine to ensure that it meets the requirements under the Safe Act. If an officer has probable cause to believe that a particular magazine is unlawful, he or she may seize and inspect it. If there is founded suspicion of criminal activity, the officer may ask for consent to check the magazine. However, the mere existence of a magazine, which may or may not be legal, does not provide probable cause to believe that any law is being broken.

If the weapon is one for which a permit is required, police will be justified in checking the permit to ensure that the person lawfully possesses the firearm. If a permit cannot be produced, the officer would be legally justified in seizing the firearm and conducting an inventory of its contents. In this case, the inventory would include checking the magazine in order to account for each round. However, if the person produces a permit and there are no indications of unlawful conduct, an inspection of the magazine would be unnecessary. In this case, the weapon should be secured temporarily, in the same condition as it was found, for the duration of the stop and returned to the motorist at the conclusion of the encounter.

> Unless there is probable cause to believe the law is being violated, there is no justification for checking a magazine to determine whether or not it contains more than 7 rounds.

NY State Police Guide to the Safe Act

## IV.   PRIVATE SALES

The Safe Act extended the requirement of a NICS check (National Instant Criminal Background Check System), which was previously limited to commercial weapons sales, to private sales through a new Article 39-DDD of the General Business Law (GBL).

**1.   General Business Law Article 39-DDD**

GBL Article 39- DDD requires that all private sales of firearms, rifles or shotguns be conducted through a licensed importer, manufacturer or dealer. Before any private sales may be made, a NICS check must be conducted by a dealer on the purchaser. While a dealer is not required to facilitate a private sale, if a dealer chooses to do so, he or she must create and maintain records relating to private sales to prove that the background checks were conducted. These records may be inspected by a police officer and are not subject to public disclosure under the FOIL provisions. The Safe Act provides that a dealer may charge up to $10 for facilitating these private transactions.

**2.   Immediate Family Exemption**

There is an exception to the requirement of a background check for transfers of weapons between immediate family members.  The term "immediate family members" is limited by statute to:

- Spouses
- Domestic Partners
- Children
- Step-children

**3.   Potential Charges**

**GBL Section 898 (6) / Unlawful Private Sale of a Firearm, Rifle or Shotgun**.

A knowing violation of these new provisions of the General Business Law, regulating the private sale of firearms, is a class A misdemeanor.  The enforceable subdivision is subdivision (6) of GBL section 898.

**EFFECT ON POLICE**

There is no exemption applicable to serving or retired law enforcement officers from these new provisions regulating private sales. Unless the officer transfers the weapon to an immediate family member, the sale must be made through a dealer and the purchaser must submit to a NICS check.

---

Police are not exempt from the requirements relating to private sales of firearms

---

## V.   PISTOL PERMITS

### 1.   Recertification Process

The Safe Act has amended section 400.00 of the Penal Law to require that all pistol permits be renewed, or recertified, every 5 years beginning in January of 2014.  Every existing permit holder will be required to recertify using a quick, free process that will begin in early 2014 on a staggered basis. Failure to recertify acts as a revocation of the license by operation of law.

During the renewal process, the database will be checked to ensure that the licensee is still qualified to possess the weapon. Detailed recertification procedures are currently being developed and will be explained to all permit holders in 2014.

### 2.   Pistol Permit records to be confidential / "Opt Out" Forms

All state records relating to the Safe Act, including pistol permit renewal records, are specifically exempt from disclosure by statute. In addition, county permit records will not be subject to disclosure if the permit holder files an "Opt Out" form with the county. This form is available at http://www.nysafeact.com or http://www.troopers.ny.gov/optoutfoil.

### 3.   Becoming ineligible at later time results in revocation

If a licensee at any time becomes ineligible to hold a license, the license is considered to be revoked under an amendment to PL 400.00 (11). In such case, the person is required to surrender his or her license to the appropriate licensing official and any and all firearms, rifles or shotguns owned or possessed by the person must be surrendered to a law enforcement agency.


### EFFECT ON POLICE

#### Removal of weapons not surrendered

If the license and weapons are not surrendered, they will be removed by a police officer and declared a nuisance. At that point, the person would lose the ability to lawfully transfer the weapon.

> If a licensee becomes ineligible to hold a pistol permit, the Safe Act requires the person to surrender **all** firearms to police, including all rifles and shotguns for which no license or registration is required.

NY State Police Guide to the Safe Act

## VI.    MENTAL HYGIENE LAW - 9.46 REFERRAL

The Safe Act added a new section 9.46 to the Mental Hygiene Law that requires a mental health professional to report, as soon as practicable, to his or her director of community services, any person under his or her care if the professional believes such person "is likely to engage in conduct that would result in serious harm to self or others."

The director of community services must, if he or she agrees with this determination, report the subject person to DCJS personnel, who will make an initial screening to determine if the subject potentially has a NYS-issued firearms license or has applied for one. If so, DCJS will notify the State Police to confirm the existence of the license and the licensing authority will be notified so they can make a determination as to whether to suspend or revoke the subject's license.

The licensing authority, and the appropriate local law enforcement agency, will handle the suspension and the recovery of any weapons in the same manner as they do now in the event the licensing authority revokes a firearms license.


## VII.   NEW CRIMES / Penal Law and General Business Law

### Unlawful Possession of a Large Capacity Ammunition Feeding Device / PL 265.36

After January 15, 2014, a person who knowingly possesses a magazine having a capacity of more than 10 rounds, that he or she lawfully possessed before the Safe Act, and which was previously exempt under the former law (manufactured before September of 1994) will be committing a class A misdemeanor. This crime may not be charged until after January 15th of 2014 because those who possess these devices have one year from the enactment of the Safe Act to transfer, dispose of, or permanently modify the magazines to a capacity of 10 rounds or less. This criminal statute would only apply to a person who knows that his or her magazine is illegal. The Safe Act requires police to provide a 30 day warning period to a person who reasonably, but mistakenly, believes that his or her magazine is lawful.

### Unlawful Possession of Certain Ammunition Feeding Devices / PL 265.37

The Safe Act created a new crime that prohibits the possession of any magazine when that magazine is actually loaded with more than 7 rounds. The penalty depends on the location of the violation. If a person violates this statute in his or her own home, the offense will be punished as a violation for a first offense and as a class B misdemeanor for any subsequent offense. If the violation takes place in any other location, the offense will be punished as a class B misdemeanor for a first offense and as a class A misdemeanor for any subsequent offense. This law is currently effective.

### Transferring a firearm, rifle or shotgun outside the provisions of GBL 39-DDD – requiring a NICS check for private sales.

Transferring a weapon to another person who is not an immediate family member is a crime under General Business Law section 898 (6) unless the transfer is conducted through a gun dealer who conducts a NICS check on the purchaser.  A violation of this law, which is currently effective, will be punished as a class A  misdemeanor.

13

**Assault 2d / Injury to child by firearm / Penal Law 120.05 (4-a)**

The Safe Act amended PL 120.05 (Assault 2nd), by adding a new subdivision 4-a, to provide that recklessly causing physical injury to a child under 18 by intentionally discharging a rifle, shotgun or firearm constitutes Assault 2nd (a class D felony). This law is currently effective.

**Aggravated Murder / Murder 1st / Penal Law 125.26 (1) (a) (ii-a) / 125.27 (1) (a) (ii-a)**

The Act extend the class of victims for which Aggravated Murder or Murder 1 may be charged to include, in addition to police, peace and correction officers, any other individual, such as a firefighter, EMT, paramedic, etc., who is murdered while engaging in his or her emergency response duties. This law is currently effective.

**Possession of a rifle, shotgun or firearm on school grounds or on a school bus without written authorization of the school. / Penal Law 265.01-a**

Subdivision (3) has been deleted from Penal Law section 265.01, relating to possessing a rifle, shotgun or firearm on school property. That law is now in a new Penal Law section, 265.01-a. The statute has the same language and elements as former subdivision (3), but has been elevated to a class E felony.  This law is currently effective.

**Criminal Possession of a Firearm / Penal Law 265.01-b**

A new Penal Law section 265.01-b entitled, "Criminal Possession of a Firearm," (a class E felony) may be charged when a person possesses any firearm (even unloaded) and does not have a permit or the benefit of an exemption listed in section 265.20. Subdivision (2) of this section, relating to the failure to register an assault weapon, is negated by an amendment to PL section 265.20 (a) (3) which provides that failing to register may only be punished as a misdemeanor "notwithstanding any other section of this title." As both sections are within Title P of the Penal Law, 265.01-b (2) is therefore ineffective.  Subdivision (1) is currently effective.

**Straw Purchases / Penal Law 265.17**

The Safe Act amended section 265.17 of the Penal Law to increase the penalty for straw purchases from a class A misdemeanor to a class D felony.  Under the new amendments, this section is violated when a person actually purchases or disposes of a firearm, rifle or shotgun to another who he or she knows is disqualified from possessing one. The language of the former law prohibiting the "attempt" to purchase the weapon has been removed. Accordingly, an "attempt" to commit this crime would now be charged one degree lower, as a class E felony. This law is currently effective.

**Drug Trafficking Felony / Penal Law 10.00 (21)**

A new subdivision 21 has been added to the Penal Law to define the term "Drug Trafficking Felony."  A person who commits a drug trafficking felony while possessing an illegal loaded firearm will be subjected to harsher punishment under the Safe Act (see PL 265.19 below). A "drug trafficking felony" includes any of the following crimes: Criminal Sale of a Controlled Substance (any degree), Using a Child to Commit a Controlled Substance Offense (PL 220.28), Criminal Sale of a Controlled Substance in or near School Grounds (PL 220.44), Unlawful

Manufacture of Methamphetamine in the first or second degree (PL 220.74 / 220.75), or Operating as a Major Trafficker (PL 220.77). This law is currently effective.

**Aggravated Criminal Possession of a Weapon / Penal Law 265.19**

A new section 265.19 to the Penal Law entitled "Aggravated Criminal Possession of a Weapon," a class C felony, may be charged when a person unlawfully possesses a loaded firearm, outside of his or her home or business, and at the same time commits a Violent Felony offense or a Drug Trafficking Felony as described above.  This law is currently effective.

**Safe Storage of Rifles, Shotguns and Firearms / Penal Law 265.45**

New PL section 265.45 prohibits a person from storing a rifle, shotgun or firearm, that is not securely locked in a safe or other secure container when such person resides with another who he or she knows is prohibited from possessing a firearm due to a felony conviction, an involuntary commitment, an order of protection or a conviction for a domestic violence misdemeanor listed in CPL 370.15. A violation of this law is a class A misdemeanor. This law is currently effective.

**Aggravated Enterprise Corruption / Penal Law 460.22**

The Safe Act added a new Penal Law section 460.22, Aggravated Enterprise Corruption, an A-1 felony, to be charged when a person commits the existing crime of Enterprise Corruption (PL 460.20) and when the underlying crimes committed are armed felonies. This law is currently effective.

## Appendix:     INDEX OF CRIMES AND OFFENSES RELATED TO THE NY SAFE ACT

| Crime or Offense | Chargeable Section | Class | Sec | Eff Date |
|---|---|---|---|---|
| Violating the provisions of Gen Bus. Law, Art 39 – DDD **Private Sales** | GBL 898 (6) | A Misd | 17 | 3/15/13 |
| **Criminal Facilitation** for providing a **community gun** under circumstances that the person believes it probably that he or she is rendering aid to a person who intends to commit a crime. The element of "conduct" in the statutes may be fulfilled by providing a community gun, defined in this section. | Whatever the appropriate underlying facilitation section is | Varies | 31 | 3/15/13 |
| **Assault 2d** – by recklessly causing physical injury to a **child** under 18 by intentionally **discharging a firearm**, rifle or shotgun. | PL 120.05 (4-a) | D Felony | 32 | 3/15/13 |
| Adds job titles of **first responders** to the list of murder victims for which **Aggravated Murder** and **Murder 1** may be charged. | PL 125.26 / PL 126.27 | A-I Felony | 35 36 | 3/15/13 |
| **Unlawful transfer** of **previously lawful** Assault Weapon or Large Capacity Ammunition Feeding Device within New York State (after a one year grace period) | PL 265.00 (22)  (h) | A Misd | 37 | 1/15/13[1] |
| Criminal Possession of a **Weapon on School Grounds** | PL 265.01-a | E Felony | 41 | 3/15/13 |
| Criminal **Possession of a Firearm** – possessing any firearm without a license or exemption. | PL 265.01-b (1) | E Felony | 41-a | 3/15/13 |
| Possession of an **unloaded firearm** while committing a **drug trafficking felony**[2] (added to Crim Possession of a Weapon 4th) | PL265.02 (9) | D Felony | 41-b | 3/15/13 |
| Possession of an **unloaded firearm** and while committing a **violent felony offense** defined in PL 70.02 (1) (added to Crim Possession of a Weapon 4th). | PL 265.02 (10) | D Felony | 41-b | 3/15/13 |
| Criminal Purchase or disposal of a weapon. Providing or **disposing of a firearm**, rifle or shotgun to one he or she knows is ineligible to lawfully possess same. *Note: Criminal purchase of a weapon has been raised from a class A misdemeanor to a class D felony. "Attempts" are no longer chargeable under this section.* | PL 265.17 (3) | D Felony | 43 | 3/15/13 |
| **Aggravated Criminal Possession of a Weapon**. Violated when  a person commits Crim Poss Weapon 2nd and also commits any violent felony offense or a drug trafficking felony in the same criminal transaction. | PL 265.19 | C Felony | 45 | 3/15/13 |

16

| | | | | |
|---|---|---|---|---|
| **Unlawful Possession of a Large Capacity Ammunition Feeding Device**[3]. - Only applies to those previously exempt large capacity magazines (made before September of 1994 and more than 10 round capacity) when the person acquired and possessed it before the enactment of the Safe Act (1/15/13). If these conditions do not apply, the person should be charged with Criminal Possession of a Weapon 3rd (PL 265.02 (8)). | PL 265.36 | A Misd – *see note 4 for special charging restrictions* | 46-a | 3/15/13 – but not enforceable until 1/15/14[4] |
| **Unlawful Possession of Certain Ammunition Feeding Devices**. (a/k/a Being loaded with more than 7 rounds). No magazine may contain more than 7 rounds, regardless of its capacity unless the person is exempt or at a range or sporting event. | PL 265.37 | B Misd – [5]*see note below* | 46-a | 3/15/13 |
| **Safe Storage** of Rifles, Shotguns and Firearms, requiring a person who lives with another and knows  the other is disqualified from possessing a firearm under certain federal provisions, to maintain the weapon securely | PL 265.45 | A Misd | 47 | 3/15/13 |
| Knowingly **Failing to Register an Assault Weapon** – This section applies when a person failed to register an Assault Weapon, that was lawfully acquired and possessed by such person on or before 1/15/13, and is the type of weapon that was made an Assault Weapon by the Safe Act. | PL 400.00 (16-a) (c) | A Misd | 48 | 4/15/14 |

---

[1] The effective date of this section is actually January 15, 2013, but since the statute PL 265.00 (22) (h) does not allow for criminal sanctions for the transfer of a large capacity ammunition feeding device until one year after the effective date,  the transfer of these magazines will not become unlawful until after January 15, 2014.

[2] A drug trafficking felony is defined in new Penal Law section 10.00 (21) as any violation offenses; PL 220.28 (Use of a Child in a Controlled Subst Offense); PL 220.34, 39, 41, 43 (Crim Sale of Controlled Subst in the 4th, 3rd, 2nd and 1st degrees); PL 220.44 (Crim Sale Contr Subst on or near School Grounds); PL 220.75 and 220.75 (unlawful Manufacture of Methamphetamine 2nd, 1st degree); and PL 220.77 (Operating as a Major Drug Trafficker).

[3] An individual who reasonably believes that the magazine is legal has 30 days after being told that it is illegal by a police officer to dispose of the device.

[4] The effective date of this part of the Safe Act is 3/15/13 but PL 265.00 (22) (h) provides a person with one year to transfer the magazine within NY State.  Therefore, police officers should not charge this section until 1/15/14.

[5] If the possession occurs in the person's home, the offense is only a violation with a fine of $200 for a first offense and a class B misdemeanor for a subsequent offense. If the possession occurs in any other place the offense is punished by a class B misdemeanor for a 1st offense and as a class A misdemeanor for subsequent offenses.